GOLDEN, RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY CO., APPELLANT.

(No. 2,659.)

(Submitted October 5, 1909. Decided October 23, 1909.)

[104 Pac. 549.]

*Removal of Causes—Petition—Failure to File in Time—Waiver —Jurisdiction—Presumptions— Evidence — Railroads—Tres-passers—Personal Injuries—Instructions.*

Removal of Causes—Diverse Citizenship—Petition—Failure to File in Time —Waiver.

1. In a personal injury action brought jointly against a railway company (citizen of another state) and one of its employees (a citizen of Montana, upon whom service of summons had never been had), on the day set for trial both parties announced that they were ready for trial, counsel for defendant company then knowing that its codefendant was not subject to the court's jurisdiction. After the cause had proceeded to the point where plaintiff was about to rest his case, counsel

for the railway company filed a petition for removal of the cause to the federal circuit court, on the ground that its codefendant was present in court, but that plaintiff refused to serve him with process, that such refusal showed that the action against both defendants had been brought in bad faith so as to prevent removal, and that the cause was then one wholly between citizens of different states, and therefore removable. Upon objection that the petition was presented too late, the motion was denied: *Held,* that the announcement by plaintiff that he was ready for trial amounted to notice to defendant company that he had elected to proceed against it alone; that the cause thus became at once removable because of the diverse citizenship of the parties; and that by failure to then file its petition for removal, defendant waived the privilege granted by the federal statute (U. S. Comp. Stats. 1901, secs. 2, 3, pp. 509, 510.)

Same—Jurisdiction of State Court.
2. Every court has the power to determine the question of its own jurisdiction, such determination being subject to review by the courts which have jurisdiction for that purpose; and this rule applies to the right of a state court to determine its jurisdiction upon the filing of a petition for removal of the cause to the federal court.

Same—Removal After Appeal—Jurisdiction of Supreme Court.
3. The contention that the state supreme court should either reverse the action of the district court in refusing to remove the cause to the federal court, or refrain from action, because the latter court, since the filing of the record on appeal, had taken jurisdiction as evidenced by an order overruling a motion of plaintiff to remand it to the district court, has no merit, since it may not be assumed that the lower court erred merely because of the action taken by the federal court; nor does it necessarily follow that the latter tribunal, in taking jurisdiction, did so properly.

Evidence—Admission of Fact Presumed.
4. Error cannot be predicated upon the admission of evidence to establish a fact which may be presumed to exist.

Railroads—Brakemen—Scope of Authority—Ejecting Trespassers.
5. The presumption obtains that a brakeman on a freight train has, *prima facie,* authority, by virtue of his employment, to eject trespassers therefrom; therefore, where defendant railway company, in an action seeking damages for injuries sustained by plaintiff in being ejected from one of its freight trains, did not offer any rebutting evidence on the question of the duties of a brakeman, it could not complain of the admission of parol and documentary evidence, in the shape of printed rules and bulletins by the company, touching such duties.

Same—Ejecting Trespassers—Evidence—Sufficiency.
6. Evidence, in an action against a railway company for injuries caused to plaintiff in being ejected from a freight train by one of defendant's brakemen, *held* sufficient to go to the jury on the question of the identity of the person who ejected plaintiff.

Same—Ejecting Trespassers—Instructions—Submitting Questions of Law —Harmless Error.
7. Plaintiff having testified that, while riding on top of a freight-car, defendant's brakeman forced him, under threats of violence, to jump from the moving train, and the court in other portions of its charge having assumed, with defendant's acquiescence, that the brakeman's conduct was unlawful, an instruction that if plaintiff was on top of the car he was a trespasser, and that defendant could prevent

such trespass "by lawful means," could not have been prejudicial to defendant as leaving the question of law, what constituted the lawful means defendant's employees could resort to in ejecting trespassers, to be answered by the jury.

*Appeal from District Court, Missoula County; Henry L. Myers, Judge.*

ACTION by Michael Golden against the Northern Pacific Railway Company and another. From a judgment for plaintiff and an order denying a motion for new trial, defendant named appeals. Affirmed.

There was a brief by *Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines,* in behalf of Appellant; *Mr. Wallace* arguing the cause orally.

The foundation of the claim of error with regard to the specifications made is the refusal of the trial court to stay proceedings therein upon the filing of appellant's petition for and bond on removal to the circuit court of the United States; for if the petition and bond were sufficient in form and were filed in time, all the subsequent proceedings in the state court were of no effect. (*Gordon* v. *Longest,* 16 Pet. 97, 10 L. Ed. 900; *Goldey* v. *Morning News,* 156 U. S. 518, 15 Sup. Ct. 509, 39 L. Ed. 517; *Kanouse* v. *Martin,* 15 How. 198, 14 L. Ed. 660; *Steamship Co.* v. *Tugman,* 106 U. S. 118, 1 Sup. Ct. 58, 27 L. Ed. 89; *Powers* v. *Railway Co.,* 169 U. S. 92, 42 L. Ed. 673; *Kern* v. *Huidekoper,* 103 U. S. 485, 26 L. Ed. 356; *Insurance Co.* v. *Dunn,* 19 Wall. 214, 22 L. Ed. 68; *Marshall* v. *Holmes,* 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870.) Under the removal statute, as is settled by the decisions of the supreme court of the United States construing it, all that it is competent for the state court to do is to determine, from the face of the record whether a case for removal has been made; any question of fact, such as citizenship, the existence of fraud, and the like, is solely for the determination of the circuit court to which the cause is removed. (*Carson* v. *Hyatt,* 118 U. S. 287, 6 Sup. Ct. 1050, 30 L. Ed. 167; *Burlington etc. Ry. Co.* v. *Dunn,* 122 U. S. 515,

7 Sup. Ct. 1262, 30 L. Ed. 1159; *Crehore* v. *Ohio etc. Ry.. Co.,* 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144; *Railroad Co.* v. *Mississippi,* 102 U. S. 135, 26 L. Ed. 96; *Railway Co.* v. *Koontz,* 104 U. S. 5, 26 L. Ed. 643; *Railway Co. v. White,* 111 U. S. 134, 4 Sup. Ct. 353, 28 L. Ed. 378.)

Our claim was and is that the joinder of McCarthy as a defendant was not made in good faith, and was fraudulent; and that by reason of this fraud on plaintiff's part we were prevented from exercising our right of removal at an earlier date than the time at which we presented the petition, which time was the earliest possible opportunity. Under these circumstances, the court erred in denying the petition. (*Yarde* v. *Railway Co.,* 57 Fed. 913; *Powers* v. *Railway Co.,* 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; *Remington* v. *Railway Co.,* 198 U. S. 95, 25 Sup. Ct. 577, 49 L. Ed. 959; *Railway Co.* v. *Hermann,* 187 U. S. 63, 23 Sup. Ct. 24, 47 L. Ed. 76; *Whitcomb* v. *Smithson,* 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303; *Guarantee Co.* v. *Bank,* 80 Fed. 766; *Mattoon* v. *Reynolds,* 62 Fed. 417; *Hukill* v. *Railway Co.,* 65 Fed. 138; *Speckart* v. *Bank,* 85 Fed. 12.)

The burden of proving that brakemen were authorized to eject trespassers from trains was upon plaintiff; there is no presumption that a brakeman has such authority. (*Corcoran* v. *Railway Co.,* 56 Fed. 1014, 6 C. C. A. 231; *Faber* v. *Railway Co.,* 118 Mo. 81, 22, S. W. 631, 20 L. R. A. 354; *Railway Co.* v. *Brackman,* 78 Ill. App. 141; 10 Ency. of Evidence, p. 508; *Randall* v. *Railway Co.,* 113 Mich. 115, 71 N. W. 450, 38 L. R. A. 666.)

: *Messrs. Hall & Patterson* filed a brief in behalf of Respondent; *Mr. J. E. Patterson* arguing the cause orally.

A petition to remove must be filed at the first opportunity, or it is waived. (*Powers* v. *Railway Co.,* 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; see, also, *Kansas City etc. R. Co.* v. *Daughtry,* 138 U. S. 303, 11 Sup. Ct. 306, 34 L. Ed. 963.) The petition for removal, while setting up as a fact that its codefendant was not served, contains no allegation whatever to the effect that such defendant had not appeared in the action. Without such

an allegation in the petition it is impossible to determine whether or not the question of service was material, and the sufficiency of the petition must be determined as it stood when filed. (*Offner v. Chicago & E. R. Co.*, 148 Fed. 202, 78 C. C. A. 359.) The appellant, in its petition for removal, attempted to set out facts constituting fraud; the facts set forth are not sufficient to warrant such a deduction. When the petition and record show the action was in fact joint, without dispute, as in this case, the joinder was lawful and proper, and could not present a question of fraud. (*Alabama G. S. R. Co.* v. *Thompson*, 200 U. S. 215, 26 Sup. Ct. 161, 50 L. Ed. 441; see, also, *Union Terminal Co.* v. *Chicago B. & Q. R. Co.*, 119 Fed. 210; *Louisville etc. R. Co.* v. *Wangelin*, 132 U. S. 599, 10 Sup. Ct. 203, 33 L. Ed. 474; *Chesapeake & Ohio Ry. Co.* v. *Dixon*, 179 U. S. 134, 21 Sup. Ct. 67, 45 L. Ed. 121.) The motive actuating the plaintiff in bringing the suit against both defendants cannot be relied on as a ground for removing a case. (*Deere etc. Co.* v. *Chicago, M. & St. P. Ry. Co.*, 85 Fed. 879; *Blackwell's Durham Tobacco Co.* v. *American Tobacco Co.*, 144 N. C. 352, 57 S. E. 5, 9 L. R. A., n. s., 276.) Whether a separable controversy exists is not to be determined from the allegations of the petition. (*Wilson* v. *Oswego Township*, 151 U. S. 67, 14 Sup. Ct. 259, 38 L. Ed. 70; *Alabama G. S. R. Co.* v. *Thompson*, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441; *Hazard* v. *Robinson*, 21 Fed. 193; *Fogarty* v. *Southern Pac. Ry. Co.*, 123 Fed. 973; *Elkins* v. *Howell*, 140 Fed. 157; *Louisville etc. R. R. Co.* v. *Wangelin*, 132 U. S. 601, 10 Sup. Ct. 203, 33 L. Ed. 474; see, also, *Seattle & M. R. Co.* v. *State*, 52 Fed. 595; *Little* v. *Giles*, 118 U. S. 596, 7 Sup. Ct. 32, 30 L. Ed. 269.)

Failure to serve one of two joint defendants has no effect on the defendant served, or on the question of removal. (*Ames* v. *Chicago S. F. & C. R. Co.*, 39 Fed. 886; *Patchin* v. *Hunter*, 38 Fed. 52; *Whitcomb* v. *Smithson*, 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303; *Offner* v. *Chicago & E. R. Co.*, 148 Fed. 202, 78 C. C. A. 359; see, also, *Plymouth etc. Min. Co.* v. *Amador etc. Canal Co.*, 118 U. S. 270, 6 Sup. Ct. 1034, 30 L. Ed. 232; *Hukill* v. *Maysville & B. S. R. Co.*, 72 Fed. 749.)

The district court was not bound to surrender its jurisdiction until a case was made which on the face of the record showed that the petitioners were in law entitled to a removal.    (*Gregory* v. *Hartley,* 113 U. S. 745, 5 Sup. Ct. 743, 28 L. Ed. 1150; *Mayer* v. *Denver T. & F. T. W. R. Co.,* 41 Fed. 724; *Stone* v. *South Carolina,* 117 U. S. 432, 6 Sup. Ct. 799, 29 L. Ed. 962.)

The authority of a brakeman on a freight train to put off trespassers is not required to be proven, and we contend that the court should take judicial notice of the fact trainmen, especially brakemen, are required, as a part of their duties, to eject trespassers from freight trains.    (*Kansas City, Ft. S. & G. R. Co. v. Kelley,* 36 Kan. 555, 59 Am. Rep. 596, 14 Pac. 172; *Lake Erie & W. R. Co.* v. *Mathews,* 13 Ind. App. 355, 41 N. E. 843; *Brevig* v. *Chicago, St. P., M. & O. Ry. Co.,* 64 Minn. 168, 66 N. W. 403; *Texas & P. Ry. Co.* v. *Mother,* 5 Tex. Civ. App. 87, 24 S. W. 80; *O'Branion* v. *Missouri Pac. Ry. Co.,* 65 Kan. 352, 69 Pac. 353; *McKeon* v. *Railroad Co.,* 183 Mass. 271, 97 Am. St. Rep. 437, 67 N. E. 329; 9 Am. & Eng. R. R. Cas. 136; *Johnson* v. *Chicago etc. Ry. Co.,* 116 Iowa, 639, 88 N. W. 811; *Bjornquist* v. *Boston & A. R. Co.,* 185 Mass. 130, 102 Am. St. Rep. 332, 70 N. E. 53; *Johnson* v. *Chicago etc. Ry. Co.,* 123 Iowa, 224, 98 N. W. 642; *Illinois C. R. Co.* v. *West,* 22 Ky. Law Rep. 1387, 60 S. W. 290.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was instituted by plaintiff to recover damages for a personal injury to himself, which he alleges was caused by the defendants by willful, wanton, and reckless negligence in ejecting him from one of the freight trains of the defendant railway company.    It is alleged that the defendant McCarthy was on the morning of June 23, 1906, in the employ of the railway company, and that he by force and violence ejected the plaintiff from one of its freight trains while it was in rapid motion, and thus caused him to fall under the wheels, whereby he suffered the loss of his

right leg.    The issues tried arose upon the denials in the answer
of the defendant railway company and its plea of contributory
negligence on the part of the plaintiff..

The plaintiff is a citizen of Montana, as was also the defendant
McCarthy, at the time the injury occurred and at the time the
action was brought.    The defendant was then in the employ of
the railway company as a brakeman.    The railway company is
a citizen of the state of Wisconsin.    McCarthy was never served
with summons, nor did he at any time by voluntary appearance
submit himself to the jurisdiction of the court, though he was
present during the trial, and testified in behalf of the railway
company.    On the second day of the trial, and after it had pro-
ceeded to the point when counsel for plaintiff were about to con-
clude the introduction of plaintiff's evidence in chief, counsel
for the railway company stated to the court that defendant
McCarthy was present in court and could be served with sum-
mons, and demanded of counsel for plaintiff to be informed
whether it was their intention to serve him and have the cause
proceed against him also.    Thereupon a colloquy took place
between the trial judge and counsel.    Counsel for the railway
company insisted that this defendant had a right to have the
cause proceed against both defendants jointly, since they were
charged jointly in the complaint, and that a refusal by counsel
for plaintiff to have summons served and to have the cause so
proceed would demonstrate that the action had been brought
against the defendants jointly in bad faith, and for the sole
purpose of preventing the removal of the cause to the circuit
court of the United States as a separate controversy between
citizens of different states.    Objection was made to further pro-
ceedings in the cause until service of summons had been made
and this defendant properly impleaded.    Counsel for plaintiff
stated that they had already caused *alias* summons to be issued,
and that they intended to have service of it made, but intended to
do so at their own pleasure, and insisted that plaintiff was en-
titled to have the trial proceed against the defendant railway
company notwithstanding defendant McCarthy had not been

served.  The judge stated that the court had no power to compel service of summons, and that it required more than a mere objection to stay proceedings, and thereupon overruled the objection.  Counsel for the railway company then presented a petition asking for a removal of the cause to the circuit court of the United States for the district of Montana, accompanied by a good and sufficient bond such as is required by the federal statute.  After stating the diverse citizenship of the plaintiff and the railway company and the character of the action, it alleged, in substance, that the allegations of joint wrong by the railway company and defendant McCarthy set forth in the complaint were false in fact and made in bad faith to prevent removal to the federal court; that no service of the summons had theretofore been made upon the defendant McCarthy, the failure to make it having been attributed by plaintiff to the fact that McCarthy had been absent from the state;  that though McCarthy had been present in court since the trial began, nearly two days, and this fact had been known to plaintiff, yet plaintiff had refused to serve him with summons; that because of the allegations in the complaint of joint wrong by defendants, and because of the reasons assigned by plaintiff for failure to serve McCarthy with summons and put him upon his defense with the railway company, it had theretofore been impossible and improper to petition for removal of the cause; that it then appeared for the first time that McCarthy had been made a party defendant fraudulently and in bad faith in order to prevent a removal of the cause; that, in fact, the action had been brought against the railway company alone; that it presented a controversy wholly between citizens of different states, to-wit, between the plaintiff and the railway company, and that it was therefore removable, under the federal statute, to the circuit court of the United States.  Upon objection by counsel for plaintiff that the petition was presented too late, the court directed the trial to proceed, thus retaining jurisdiction of the cause over the protest and objection of the railway company.  The plaintiff had verdict for $5,000.  From the judg-

ment entered thereon and from an order denying its motion for a new trial, the defendant railway company has appealed. The validity of the judgment is assailed on the grounds that the court erred in refusing to surrender jurisdiction of the cause upon the filing of the petition for removal, in its rulings upon certain questions of evidence during the trial, and in the instructions submitted to the jury. The contention is also made that the evidence is insufficient to sustain the verdict.

1. As to the propriety of the first contention there can be no doubt, if the petition was sufficient and was filed in time; for there is no question but that the bond was sufficient. In addition to the contention that the petition was filed too late, it is also urged, with some reason, by counsel for plaintiff, that it contains no sufficient allegation of fact, but conclusions of law only, and for this reason was properly disregarded by the trial court. For present purposes we shall assume that the statements of fact contained in it, aided by those appearing in the record, are sufficient to warrant a removal, and consider the question only whether it was filed in time; for it cannot be controverted that the action has now assumed the aspect of a controversy between citizens of different states, and should have been removed upon timely application for that purpose. In determining this question, the contents of the petition must be considered in connection with the proceedings in the case prior to its presentation. We must presume that the trial was taken up in due course, upon the day theretofore appointed, and upon the announcement of both parties that they were ready for trial. The announcement by the plaintiff that he was ready for trial, defendant McCarthy not being then subject to the jurisdiction of the court so as to be put upon his defense, a fact known to counsel for the railway company, amounted to notice by the plaintiff that he had determined to proceed against the railway company alone. This was equivalent to a complete severance of the action as to the railway company, and, so far as it is concerned, converted it into a separate action against this defendant as effectively as if it had originally been made the sole defendant. (*Berry* v. *St. Louis & S. F.*

*R. R. Co.* (C. C.), 118 Fed. 911; *Yarde* v. *Baltimore & O. R. Co.* (C. C.), 57 Fed. 913; *Northern Pacific R. R. Co.* v. *Austin,* 135 U. S. 315, 10 Sup. Ct. 758, 34 L. Ed. 218; *Powers* v. *Chesapeake & O. Ry. Co.,* 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; *Kansas City, Ft. Scott & M. R. Co.* v. *Daughtry,* 138 U. S. 298, 11 Sup. Ct. 306, 34 L. Ed. 963.) Thus the action became at once removable on the ground of diverse citizenship without regard to the question whether the joinder was originally made in bad faith for the purpose of preventing removal. This was declared to be the rule in *Berry* v. *St. Louis & S. F. R. R. C., supra,* which was an action by plaintiff for damages for the death of her husband against two railway companies, one of which was a resident of the same state with the plaintiff, but had never been served with summons. The plaintiff had the cause set down for trial upon issues joined by the nonresident defendant, and refused to say whether she intended to dismiss or discontinue the cause as to the other defendant. The cause having been removed to the circuit court, a motion was made to remand it to the state court. In disposing of the motion, after pointing out that under the state statute the action was one that could be made joint or several, at the option of plaintiff, the court said: "In the case in hand the plaintiff abandoned her right to a joint judgment by demanding a trial as to one defendant in the absence of service upon the other. The course of trial and the character of the verdict and judgment in a joint action render any other conclusion impossible." So in this state the statute authorizes the rendition of a judgment against one or more of several defendants, leaving the action to proceed against the others, whenever a several judgment is proper. (Revised Codes, sec. 6712.) It cannot be questioned but that the plaintiff in cases of tort like the one at bar has the option to proceed against any one or all of the defendants by whose concurrent action the wrong was done. (Cooley on Torts, 3d ed., pp. 244, 252.) The same principle was recognized and applied in the other cases cited.

It is pointed out by the court in *Powers* v. *Chesapeake & O. Ry. Co., supra,* that an action which is not removable because it is not a separate controversy wholly between citizens of different states, becomes removable whenever by voluntary action on the part of the plaintiff during the course of the proceedings it is discontinued as to the resident defendant or defendants, even though the litigation has so far proceeded that issues have been joined by the moving defendant. The court, speaking through Mr. Justice Gray, said: "The reasonable construction of the Act of Congress, and the only one which will prevent the right of removal, to which the statute declares the party to be entitled, from being defeated by circumstances wholly beyond his control, is to hold that the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right; and to consider the statute as, in intention and effect, permitting and requiring the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought. The result is that, when the plaintiff discontinued his action as against the individual defendants, the case for the first time became such a one as by the express terms of the statute the defendant railway company was entitled to remove; and therefore its petition for removal, filed immediately upon such discontinuance, was filed in due time."

Section 3 of the federal statute (U. S. Comp. Stats., 1901, p. 510) declares: "That whenever any party entitled to remove any suit mentioned in the next preceding section ˙ * * * may desire to remove such suit from a state court to the circuit court of the United States, he may make and file a petition in such suit in such state court, at the time or any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought, to answer or plead to the declaration or complaint of the plaintiff, for the removal," etc. As construed in the case of *Powers* v. *Chesapeake & O. Ry. Co., supra,* it permits the removal at any time during the progress of the cause at which it becomes removable; yet its express lan-

guage "at the time or any time before the defendant is required
*  *  *  to answer or plead," etc., implies conclusively that a
failure to apply promptly upon the first opportunity amounts
to a waiver of the privilege, and that it cannot thereafter be
claimed.

It is suggested in *Northern Pacific R. R. Co.* v. *Austin, supra,*
that, if the conduct of the plaintiff in any given case amounts to
a mere device to prevent removal, he may be estopped thereby to
allege that the application comes too late; nevertheless, clearly
the estoppel cannot be effective if the application for removal
be deferred beyond the point of time, during the proceedings,
at which it should be made.  "Nothing is better settled than that,
to enable us to take jurisdiction on the ground of the denial by
a state court of a right claimed under a statute of the United
States, the record must show that the right was especially set up
or claimed at the proper time and in the proper way, and that
the decision was against the right so set up or claimed."
(*Northern Pacific R. R. Co.* v. *Austin, supra;* see, also, *Removal
Cases,* 100 U. S. 457, 475, 25 L. Ed. 593.)

Many cases are cited by counsel for the defendant which de-
clare that a state court loses jurisdiction when a petition sufficient
on its face has been filed in time; that all questions of fact aris-
ing thereon are primarily for the federal courts to decide, since
a final decision of them involves a question of federal jurisdic-
tion; that further proceedings in the state court should be de-
ferred until such final decision may be had; and that notwith-
standing the state court has refused to surrender jurisdiction,
upon filing a copy of the record in the circuit court, that court
may use the summary process of injunction to stay proceedings.
None of these cases contains anything in conflict with the familiar
rule that every court has the power to determine the question of
its jurisdiction; such determination being subject to review by
the courts which have jurisdiction for that purpose.  The su-
preme court of the United States expressly recognizes and gives
effect to this rule in this class of cases.  (*Gregory* v. *Hartley,* 113
U. S. 742, 5 Sup. Ct. 743, 28 L. Ed. 1150; *Baltimore & Ohio R.*

*R. Co.* v. *Koontz,* 104 U. S. 5, 26 L. Ed. 643; *Stone* v. *South Carolina,* 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962.)   If the determination is erroneous, all subsequent proceedings, including the final judgment, are void; otherwise, the result is valid and binding.   (*Kern* v. *Huidekoper,* 103 U. S. 485, 26 L. Ed. 354; *Chesapeake & O. R. Co.* v. *McCabe,* 213 U. S. 207, 29. Sup. Ct. 430, 54 L. Ed. ——.)   But, notwithstanding the state court loses jurisdiction, the defendant may nevertheless, without peril to his rights, reserve his exception, and thereafter make all proper defense to the action.   Upon final decision by the state court of last resort, if it be adverse to him, he may upon writ of error have the decision reviewed and overruled by the federal court of last resort, and the error thus corrected.   (*Chesapeake & O. R. Co.* v. *McCabe, supra.*)

We are of the opinion that the district court properly disregarded the petition for removal on the ground that it was not filed in time.   The application should have been made at the opening of the trial.

During the argument we were informed by counsel that since the termination of the trial in the district court a copy of the record in the case had been filed in the federal court, and that that court had assumed jurisdiction of the case by overruling a motion by plaintiff to remand it to the district court.   In a supplemental brief the contention is made that this court should take judicial notice of this fact and reverse the judgment, or refrain from action upon the appeal until a final decision by the federal court.   This contention cannot be sustained.   The defendant brought its appeal into this court for determination of its rights upon the record made in the district court prior to the time the federal court assumed jurisdiction.   If we should pursue the course suggested by counsel, we would do so upon the assumption that the district court erred in refusing to surrender jurisdiction simply because of the action taken by the federal court; whereas it seems clear that the action of the district court was correct.   While we may take.judicial notice of the action of that court (Revised Codes, sec. 7888), it does not follow that we

must necessarily conclude that that court properly assumed jurisdiction. Upon this subject we express no opinion further than what is implied by the conclusion stated above. The rule of comity which exists between the courts of two jurisdictions forbids adverse comment. There are two courses open to the defendant, either of which may be made applicable in order to have its rights finally determined by the proper court. It may have the judgment of this court reviewed upon error to the supreme court of the United States, as the defendant did in *Chesapeake & O. R. Co.* v. *McCabe, supra,* or it may, upon a final disposition of the case by this court, invoke the process of injunction to restrain the plaintiff from proceeding further until the federal question is finally determined by the proper tribunal. Either course will give it all the relief to which it is entitled.

2. On the trial the plaintiff proceeded upon the theory that, in order to hold the railway company liable, it was not sufficient for him to show simply that he was violently ejected from the train by a brakeman in the employ of the company, but that he must show, further, that the act of the brakeman was within the scope of his authority. With this supposed requirement in mind, he sought to prove such authority both by parol evidence as to the course of conduct pursued by himself and other brakemen in the employ of the company, and also by the introduction of the printed rules and published bulletins of the company. To all of this evidence the defendant interposed various objections, which were overruled. The contention is now made that there was prejudicial error in these rulings. Counsel for plaintiff contends that these rulings could not have been prejudicial, for the reason that there is a presumption arising out of the relations of a brakeman to the railway company and its trains, and the character of the employment—which are matters of common knowledge,—that he has such authority, and that it was not incumbent upon plaintiff to adduce any evidence on the subject. Hence the evidence was wholly immaterial, and could not have affected the result. If this presumption obtains, and the court would have been justified in so instructing the jury, the conten-

tion of defendant's counsel is without merit, without regard to the form in which the evidence was adduced; for error cannot be predicated upon the admission of evidence to establish a fact which is admitted in the pleadings or which may be presumed to exist. This brings us to the question whether a brakeman on a freight train has authority by virtue of his employment to eject trespassers therefrom. There is a conflict in the decisions on the subject. Some of the courts hold that the fact that the plaintiff was injured by the tortious act of the brakeman while employed by the defendant does not in itself render the defendant liable, but that the wrong must be shown to pertain to his particular duty and to fall within the scope of his authority. *Farber* v. *Missouri Pac. R. Co.,* 116 Mo. 81, 22 S. W. 631, 20 L. R. A. 350, is an illustration of this class of cases. The weight of authority and reason, however, is clearly in favor of plaintiff's contention. Mr. Patterson, in his work on Railway Accident Law, after stating that some of the courts hold to the contrary doctrine, says: "The doctrine of most of the cases, however, is that wherever a railway servant is put in charge of any property of the railway, as a station-master in charge of a station, or a conductor in charge of a train, or an engine driver or fireman in charge of an engine, or a brakeman in charge of a car, that servant is necessarily charged with the duty of protecting that particular property, and he is therefore for that purpose vested with an implied authority to remove trespassers therefrom; and, if he makes a mistake, either by removing a person who is rightfully therein or thereon, or by using unnecessary violence in the removal of a trespasser, the railway company must be held liable for all such injuries as result in the one case from the removal, and in the other case from the unnecessary violence with which that removal is effected." (Section 111.) This author seems to limit application of the rule to cases where the brakeman is in charge of a particular car. Mr. Baldwin, in his work on American Railroad Law, page 254, states the rule more broadly thus: "It is *prima facie* within the implied authority of a brakeman, whether on a passenger or a freight train, to put off any

person who is found upon it without right; and, if he does this at an improper place or in an improper manner, whereby such person is unnecessarily injured, the company is liable, even if the · act were wanton and reckless, provided it were not done to accomplish an independent, malicious purpose of his own. But if the known rules of the company exclude any such authority, the implication is rebutted as respects trespassers.''

So in *Kansas City F. S. & G. R. Co.* v. *Kelly,* 36 Kan. 655, 59 Am. Rep. 596, 14 Pac. 172, in speaking generally of the authority and duty of servants of railway companies, including brakemen, the court said: ''The removal of trespassers from the train was within the implied authority, and became the duty of the servants in charge of the train; and the fact that in so exercising that right or duty they acted negligently or wantonly, and caused the boy to jump off the train while running at a speed unsafe for him to get off, and he was injured, will not exonerate the defendant.''

In *Hoffman* v. *New York Central & H. R. Co.,* 87 N. Y. 25, 41 Am. Rep. 337, the court, assigning the duties of a brakeman with reference to the protection of the property of the company to the same category as those of the conductor, said: ''The implied authority in such case is an inference from the nature of the business, and its actual daily exercise according to common observation and experience.'' The rule thus stated finds support in the following cases: *Brevig* v. *Chicago, St. P., M. & O. Ry.,* 64 Minn. 168, 66 N. W. 401; *Dixon* v. *Northern Pacific Ry. Co.,* 37 Wash. 310, 107 Am. St. Rep. 810, 79 Pac. 943, 68 L. R. A. 895; *Hill* v. *Baltimore & N. Y. Ry. Co.,* 75 App. Div. 325, 78 N. Y. Supp. 134; *Smith* v. *Louisville & N. Ry. Co.,* 95 Ky. 11, 23 S. W. 652, 22 L. R. A. 72; *Bjornquist* v. *Boston & A. R. Co.,* 185 Mass. 130, 102 Am. St. Rep. 332, 70 N. E. 53; *Johnson* v. *Chicago, St. P. & M. Ry. Co.,* 116 Iowa, 639, 88 N. W. 811; *Illinois Cent. Ry. Co.* v. *West* (Ky.), 60 S. W. 290; *McKeon* v. *New York etc. R. R. Co.,* 183 Mass. 271, 97 Am. St. Rep. 437, 67 N. E. 329.

The duties of a brakeman are less extensive than those of a conductor, who has general charge of the train; but it would be going too far to say that the brakeman's duty extends no further than to turn brakes, couple cars, and the like, and that he may stand by, unless expressly authorized and required by the company to protect its property from trespassers, and allow them to commit trespasses without restraint.   A brakeman who would do this would not long retain his place after knowledge of his conduct came to his superior officers.   On the other hand, if, after ejecting a trespasser, he were charged with an assault upon him, it could not be doubted that the fact that the act charged as unlawful was committed for the purpose of protecting the property of the company, no more force having been used than the circumstances required, would be a complete defense.   Under some of the foregoing authorities, the presumption is only *prima facie,* while under others it is conclusive.   We are inclined to follow the former.   (Revised Codes, secs. 7961, 7962.)   For the purposes of this case, however, it is immaterial which rule is applied.   The defendant offered no evidence as to the duties of a brakeman.   Therefore it cannot complain of the rulings in question.

. 3. Contention is made that the evidence is insufficient to justify the verdict, in that it fails to show (1) that the person who ejected the plaintiff was the defendant McCarthy; and (2) that McCarthy had authority from the company to eject the plaintiff. The testimony of plaintiff shows that one of the company's freight trains was about to leave the station at Arlee, Montana, going west, it being in the early morning and still dark; that he climbed to the top of one of the cars near the caboose, intending to ride to the next station; that he had money enough to pay his fare; that, after the train began to move, he was accosted by a man who carried a white lantern in one hand and a stick in the other, about three feet long, and was told to get off, with a threat that unless he did so he would be knocked off; that he offered to pay his fare, but this was refused with a repetition of the threat; that he began to climb down the side ladder, remon-

strating against being compelled to get off while the train was in motion, and that, in spite of his remonstrances, he was pursued by the man until he was compelled to swing off the ladder and so fell under the wheels. He referred to this man as the "rear brakeman" and "McCarthy," but did not at first undertake to identify him further than to give a somewhat meager personal description of him. Later during the trial, after seeing McCarthy and hearing him speak, he identified him positively. From the testimony of McCarthy, the conductor, and the head brakeman it appears that McCarthy was the rear brakeman; that it was part of his duty to attend to the brakes toward the rear, dividing the train with the head brakeman, and that, when he got upon the train at the siding, he carried a white lantern and a brakestick about three feet long. These facts, together with the assumption of authority made by him, were sufficient to go to the jury as to the identity of the person who ejected plaintiff. The testimony of all the members of the train crew tended strongly to show that, when the train began to move, McCarthy went into the caboose with the conductor, and remained there until the next station had been reached. McCarthy himself testified that he did not put anyone off the train on that occasion, and that he had never done so on any other occasion whatever. If the statements of these witnesses were to be taken as true, then the person who ejected plaintiff was not one of the employees of the company. The truth of their statements, however, was a question to be resolved by the jury, and with their conclusion we cannot interfere. What has already been said on the subject of the implied authority of the brakeman disposes of the second point made as to the insufficiency of the evidence. The defendant adduced no evidence on this subject. This left the case to go to the jury upon the presumption that it was his duty to eject trespassers from the train.

4. Among others, the court gave the following instruction: "A further section of the law which I have quoted to you declares: 'Section 2. It shall be and is hereby declared to be misde-

meanor for any person except railroad employees in the perform-
ance of their duty to take passage or ride upon or enter for the
purpose of taking passage or riding upon the trucks, rods, brake-
beams, or any part of any car, locomotive, or tender not ordi-
narily and customarily used or intended for the resting place of
a person riding upon or operating the same.' I instruct you that
the roof or side ladder of a freight box-car are neither of them
places ordinarily or customarily used or intended for the resting
place of persons riding thereon, and because thereof plaintiff,
when on such portions of said car, if he was thereon, was not
only a trespasser, but was at the same time engaged in the com-
mission of an unlawful and criminal act, and of a violation of the
foregoing criminal statute, which the defendant was entitled to
prevent, in a reasonable manner considering the circumstances,
and by lawful means.'' It was requested by the defendant as
given, except that the court added the words "in a reasonable
manner considering the circumstances, and by lawful means.''
It is said that the modification rendered the instruction preju-
dicially erroneous, in that it left the jury to determine the ques-
tion of law: What are the lawful means which the employees of
the company may resort to to eject trespassers? It is true all
questions of law should be resolved by the court, leaving the
jury to deal with the facts only, as counsel contend. (*Gallick
v. Bordeaux*, 31 Mont. 328, 78 Pac. 583.) Here, however, there
is no question as to the means adopted by McCarthy in ejecting
the plaintiff, if the jury believed plaintiff's testimony. Nor is
there any question that his conduct was unlawful. In other por-
tions of the charge the court assumed this to be so, and counsel
for defendant acquiesced in this assumption. It was therefore
not within the province of the jury to inquire, nor could they un-
der the charge have understood that they were to inquire, as
to the character of the means the statute authorizes to be used
generally, or what other means might have been availed of in
this particular case. It therefore would seem entirely unreason-
able to conclude that the defendant suffered prejudice by the

vague language employed by the court in the portion of the instruction criticised.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Smith and Mr. Justice Holloway concur.

Appeal taken to the supreme court of the United States, on November 20, 1909.

