[No. 1744, May 20, 1915.]

CHILDERS v. SOUTHERN PACIFIC COMPANY.

SYLLABUS BY THE COURT.

1. A master is liable for the wanton or malicious acts of his servant, if they were committed while the servant was acting in the execution of his authority and within the scope of his employment.            P. 371

Childers v. Southern Pacific Company, 20 N. M. 366.

2. In general terms it may be said that an act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interest, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

P. 372

3. The master is liable for the act of his servant in assaulting and arresting one whom he erroneously believed to be a trespasser, where he had the authority to eject trespassers from the master's premises, and to arrest them therefor.

P. 373

4. The form and substance of a requested instruction must be such that the court may properly charge the jury in the terms of the request, without qualification or modification.

P. 375

5. In order to obtain a review in the appellate court of instructions given by the trial court of its own motion, the complaining party must, by proper exceptions or objections, point out the alleged vice in the objectionable instruction, so that the lower court will have the opportunity to correct the same, and where this is not done the appellate court will not consider the alleged error.

P. 376

6. The mere fact that a servant is also a police officer is no defense to an act performed within the scope of his employment for the master, and in the line of his duty to the master.

P. 376

Appeal from District Court, Luna County; Neblett, Judge.

Action by John T. Childers against the Southern Pacilc Company. From judgment for plaintiff, defendant appeals. Affirmed.

FRANCIS M. HARTMAN of Tucson, Arizona; J. C. FORREST, Phoenix, Arizona, and R. F. HAMILTON of Deming, for appellant.

Appellee was a mere trespasser upon the tracks of appellant company; did not contemplate passage on its line of railroad; that there was no privity between the two, nor was he on the right of way for the purpose of transacting any business with appellant company. Under the pleadings and proof appellee was not entitled to recover under the law.

Phila. B. & W. R. Co. v. Stumpo, 112 Md. 571, 77 Atl. 266; Labatt's Master & Servant, vol. 6, 7535; Id., vol. 7, 7769, 7773, 7774; McCann v. Tillinghaus, 140 Mass. 327, 5 N. E. 164; Berryman v. Penn. R. Co., 228 Pa. 621, 77 Atl. 1011, 30 L. R. A. (N. S.) 1049; St. L. S. W. R. Co. v. Harvey, 144 Fed. (C. C. A.) 806; Golden v. Newbrand, 52 Ia. 59, 2 N. W. 537; Belt R. R. Co. v. Banicki, 102 Ill. App. 642; Holler v. Ross, 53 Atl. (N. J.) 472; Davis v. Houghtelin, 33 Neb. 582, 50 N. W. 765; McPeak v. Missouri Pac. R. Co., 30 S. W. 174, Ga. R. R. Co. v. Wood, 21 S. E. 288.

ELY & WATSON of Deming, for appellee.

Had appellee been a trespasser appellant would be liable for excessive or unnecessary force used by its watchman, possessing the admitted authority of arresting persons.

6 Labatt's Master & Servant, 6692, et seq.; D. & R. G. R. R. Co. v. Harris, 3 N. M. 114, 2 Pac. 369; Klenk v. Oregon Short Line R. Co., 76 Pac. (Utah) 214; Johnson v. Chicago St. P. M. & O. R. Co., 110 N. W. (Wis.)

Childers v. Southern Pacific Company, 20 N. M. 366.

424; Johnson v. C. R. I. & P. R. R. Co., 12 N. W. (Ia.) 329; McDonald v. Franchere, 71 N. W. (Ia.) 427; C. R. I. & P. Ry. Co. v. Kerr, 104 N. W. (Neb.) 49; Daniel v. Petersburg R. Co., 4 L. R. A. (N. S.) 485; Chicago Great Western Ry. Co. v. Troup, 80 Pac. (Kan.) 30.

Appellant is liable for the act of its servant in assaulting and arresting one whom he erroneously believed to be a trespasser. To hold otherwise would be to protect a real trespasser but to give no protection to one not a trespasser.

Patt. Ry. Acc. Law, sec. 111; Brevig v. Ch. St. P. M. & O. R. Co., 66 N. W. (Minn.) 401; Golden v. Northern Pac. Ry. Co., 104 Pac. (Mont.) 549; Dixon v. Northern Pac. Ry. Co., 79 Pac. (Wash.) 943; Conchin v. E. P. & S. W. Ry. Co., 108 Pac. (Ariz.) 260; Gillingham v. Ohio River R. Co., 14 L. R. A. (W. Va.) 798; Staples v. Schmidt, 19 L. R. A. (R. I.) 824; Galehouse v. Minn. St. P. & S. S. M. R. Co., 135 N. W. (N. D.) 189.

## STATEMENT OF FACTS.

This is a suit brought by John T. Childers, appellee herein, against the Southern Pacific Company, appellant herein, in the district court of Luna county, to recover damages for an alleged assault and for an alleged wrongful arrest by a watchman of said company on the night of May 12 and 13, 1913, upon the right of way, depot, and station grounds of the said railroad company at the town of Deming. The defendant company demurred to the complaint for insufficiency, and for other reasons, specifying the several grounds of demurrer, which demurrers were overruled by the court, and the defendant company answered denying generally and specifically all the material allegations of the complaint relating to the alleged assault and to the alleged wrongful arrest. A trial was had before the court and a jury, and verdict returned in favor of plaintiff for damages in the sum of $1,500.00. Motion for new trial was filed by defendant company upon various grounds, which was denied by the court and judgment entered on the verdict. From such judgment, appellant prosecutes this appeal.

The facts in the case, as disclosed by the evidence, sup-
porting the verdict of the jury, may be briefly stated as
follows: At the time in question, appellant owned and
operated a railroad, which traversed the town of Dem-
ing from east to west. To the north of the main track
was appellant's depot, and immediately south of the track,
and opposite the depot, were grounds occupied by appel-
lant. South of these grounds lay the business section of
Deming. Silver avenue extended south from said grounds,
through said business section, to the courthouse. Appel-
lant had in its employ, as a night watch, one L. F. Salis-
bury, commonly known as "Casey Jones," whose authority
and duty was, as stated in the complaint, "by reason of
his employment, to watch and guard the yards, grounds,
buildings, trains, and other property of said defend-
ant, at said Deming, to prevent depredations and
trespasses thereon, to prevent trespassers from com-
ing or remaining upon or in said yards, grounds,
buildings, and trains, to prevent any and all per-
sons from boarding said trains for the purpose of stealing
rides thereon, and to remove such persons so boarding, or
attempting to board such trains, and to apprehend or
cause the apprehension and arrest of, all persons who he
believed had committed or attempted to commit any such
depredations or trespasses, or had boarded, or attempted
to board, such trains for the aforesaid purpose." Appel-
lant also had in its employ one Adams, who was a "spe-
cial agent" or "riding officer," among whose duties it was
"to see that the watchmen are on the job," and to report
watchmen who were not attending to their duties. At
about 1 o'clock on the night of May 12 and 13, 1913, ap-
pellee started to go from the business section of Deming,
across appellant's grounds and track, to its depot; his
purpose being to see one Baze, from whom he had en-
gaged a room, and to learn its number. As appellee ap-
proached the track, he found a train standing between him
and his destination, and as he stood there, on appellant's
grounds, Salisbury, the watchman, accosted him, accused
him of being about to catch the train, and, on appellee's
denial of such intent, commenced an assault upon him.

Appellee was knocked down by the first blow, and made no resistance to the assault. After beating appellee for some time, the watchman conducted him around the engine, and to the station platform, on the north side of the track. Here the beating was continued. Adams, the special agent, called upon Salisbury to "give it to him," or "swat him again"; but, through the interference of Fred Jack, an immigration inspector, the beating was then discontinued. Salisbury then procured appellee's arrest by Dan Hathaway, the jailor of Luna county, and John Warren, city night watch. Appellee was taken to jail, where he remained until the morning of May 14th (two nights and one day), when he was discharged. Appellee was not attempting or intending to board the train, or to molest any property. Salisbury had never seen appellee before, and had no personal grudge against him.

Not all of the foregoing facts are undisputed; but there is evidence in support of all of them, justifying the jury in finding the facts as here stated.

## OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above) — Counsel for appellant have not indicated clearly the points they intend to raise by their assignments of error 1, 2, and 3, discussed under their first proposition; but from a reading of the assignments in question, and the authorities cited in support thereof, we shall assume, as did counsel for appellee, that the following questions are involved.

(1) Was the watchman acting within the scope of his employment, or in pursuance of his own ends?

(2) Is appellant liable for an assault by its servant upon one whom he erroneously believed to be a trespasser?

These questions were raised in the court below by a demurrer to the complaint, objection to the introduction of any evidence, and by motion for a directed verdict. We will discuss them in the order stated.

[1] The nature and extent of the watchman's authority and duties are set forth at length and with particularity in the complaint, in the following language:

"(3) That, at the time and place aforesaid, said defendant had in its employ as a night watchman one L. F. Salisbury; and that it was the duty of said Salisbury, by reason of his said employment, to watch and guard the yards, grounds, buildings, trains, and other property of said defendant, at said Deming, to prevent depredations and trespasses thereon, to prevent trespassers from coming or remaining upon or in said yards, grounds, buildings, and trains, to prevent any and all persons from boarding said trains for the purpose of stealing rides thereon and to remove such persons so boarding, or attempting to board such trains, and to apprehend, or cause the apprehension and arrest of, all persons who he believed had committed or attempted to commit any such depredations or trespasses or had boarded, or attempted to board, such trains for the aforesaid purpose."

This authority is either expressly or impliedly admitted by the answer, and the question whether, in a proper case, the watchman was authorized to remove a trespasser from appellant's grounds or trains, or to arrest or cause the arrest of such trespasser, is foreclosed by the pleadings.

[2] It has been held, in a great variety of cases, that the master is liable for the wanton or malicious acts of his servant if they were committed while the servant was acting in the execution of his authority and within the course of his employment. Mechem on Agency (2d Ed.) § 1960; Elliott on Railroads, § 1265. Some of the earlier cases, it is true, announced the contrary rule; but this doctrine no longer prevails. The difficult question is to determine what acts may be deemed to be within the course of the servant's employment, within the meaning of the rule. Mechem on Agency, § 1960, states the rule as follows:

"But in general terms it may be said that an act is within the 'course of employment' if (1) it be something fairly and naturally incident to

the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account."

Tested by this rule, it clearly appears from both the pleadings and proof that appellant's servant was engaged in and about his performance of appellant's business at the time the acts complained of were committed and performed. It was a part of his duties to keep trespassers off the grounds of appellant, and to prevent persons from boarding its trains for the purpose of "stealing a ride." Appellee says that the watchman accused him of intending to board the train, and, although he denied the accusation, the watchman beat him. Undoubtedly it was a part of his duty to prevent persons from doing just what he assumed, probably mistakenly, the appellee intended doing. Appellee says he had no intention of boarding the train, and because of this appellant argues that the act of the servant was without the scope of his employment, for he was only employed to prevent persons from stealing a ride, and, as appellee had no such intention, the servant was not authorized to molest him. The appellant necessarily intrusts to its servant, charged with the duty specified, to determine whether a given person intends to board its trains, and, when he determines this question and acts upon his own judgment, he is acting within the scope of his employment. It is true the watchman testified that he was assaulted by appellee, and that he did not believe appellee was about to board the train, and that what he did in the premises was to protect himself from great bodily injury. The two theories were submitted to the jury, and we assume that the story told by appellee was true, because the jury so found.

[3] The master is liable for the act of his servant in

assaulting and arresting one whom he erroneously believ-
ed to be a trespasser, where he had the authority to eject
trespassers from the master's premises, and to arrest them
therefor. But objection is made that the servant was not
authorized to remove or arrest one who was not a tres-
passer, or who was rightfully upon the premises; and that,
if he did so, he stepped aside from the scope of his em-
ployment, and acted merely on his own account. Coun-
sel has pursued this fallacy throughout the case, contend-
ing for it now no less strenuously than in their demurrer.

To adopt such a rule would result in a manifest ab-
surdity. It would be to say, in effect: "We will protect
a real trespasser against the use of excessive force, but we
cannot give any protection or redress to one who is not
trespassing." It would put the rights of the guilty above
those of the innocent. The idea is apparently a relic of
the ancient rule, long since abandoned, that it was ultra
vires for the corporation to do any wrong, or authorize a
tort; and that it could not, therefore, be liable. The ques-
tion is not as to appellee's intent or status; but is, rather,
as to the watchman's belief or supposition. If he sup-
posed appellee to be about to unlawfully board a train, or
commit other depredation, he acted within the scope of
his employment in dealing with him as such a person, and
the master must answer for his mistake.

The rule is stated in Patt. Ry. Acc. Law as follows:

> "The doctrine of most of the cases, however, is
> that, whenever a railway servant is put in
> charge of any property of the railway, as a sta-
> tion master in charge of a station, or a conduc-
> tor in charge of a train, or an engine driver or
> fireman in charge of an engine, or a brakeman
> in charge of a car, that servant is necessarily
> charged with the duty of protecting that particu-
> lar property, and he is therefore, for that pur-
> pose, vested with an implied authority to remove
> trespassers therefrom; and if he makes a mis-
> take, either by removing a person who is right-
> fully thereon, or by using unnecessary violence
> in the removal of a trespasser, the railway must

be held liable for all such injuries as result, in the one case from the removal, and in the other case from the unnecessary violence with which that removal is effected." Patt. Ry. Acc. Law, § 111; Brevig v. Ch., St. P., M. & O. Ry. Co., 64 Minn. 168, 66 N. W. 401; Golden v. Northern Pac. Ry. Co., 39 Mont. 435, 104 Pac. 549, 34 L. R. A. (N. S.) 1154, 18 Ann. Cas. 886; Dixon v. Northern Pac. Ry. Co., 37 Wash. 310, 79 Pac. 943, 68 L. R. A. 895, 107 Am. St. Rep. 810, 2 Ann. Cas. 620; Conchin v. E. P. & S. W. Ry. Co., 13 Ariz. 259, 108 Pac. 260, 28 L. R. A. (N. S.) 88; Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827.

In some of these cases the question was as to whether authority to do the act charged could be presumed, from the nature of the employment shown, to be within its scope. In the case at bar, as remarked above, we need indulge no presumption, as the acts charged are within the admitted authority of the servant.

No argument is advanced in support of the fourth assignment of error, and it will not be considered.

[4] The fifth assignment relates to the refusal of the trial court to give an instruction requested by defendant to the effect that, if the jury believed that plaintiff was arrested by a police officer of the village of Deming for being drunk and disorderly, they should find for the defendant. The requested instruction was doubtless refused because it was too broad. Appellant was charged with both an assault and an arrest, and the requested instruction ignored altogether the claimed damages for the assault.

> "The form and substance of a requested instruction must be such that the court may properly charge the jury in the terms of the request, without qualification or modification. If a requested instruction is erroneous either wholly or in part, it is properly refused." 38 Cyc. 1707.

Assignment No. 6 is disposed of by what we have here-tofore said in this opinion, and, as assignments Nos. 7 to 12 are not discussed by appellant, they will not be considered.

[5] Assignments Nos. 13 to 17, inclusive, are based upon the giving of certain instructions to the jury by the trial court. While exception was taken by appellant to the giving of each of the claimed erroneous instructions, the defects were not pointed out, or in any manner called to the attention of the trial court. In order to obtain a review in this court of instructions given by the trial court of its own motion, the complaining party must, by proper exceptions or objections, point out the alleged vice in the objectionable instruction, so that the lower court will have the opportunity to correct the same, and where this is not done this court will not consider the alleged error. James v. Hood, 142 Pac. 162, and cases cited.

[6] Under its eighteenth assignment, appellant discussed two propositions, the first being alleged error on the part of the trial court in excluding from the jury a commission, issued by the Governor of New Mexico to appellant's watchman as a mounted policeman. It is a sufficient answer to this contention to say that there is no evidence in the record, nor was any tendered, showing that the watchman was pretending to act as a mounted policeman at the time of the arrest; nor was such fact pleaded by appellant in its answer. The mere fact that Salisbury, appellant's servant, was a police officer, would be no defense to an act performed within the scope of his employment for appellant, and in the line of his duty. McKain v. B. & O. R. R. Co., 65 W. Va. 233, 64 S. E. 18, 23 L. R. A. (N. S.) 289, 131 Am. St. Rep. 964, 17 Ann. Cas. 634.

The second contention is that the verdict is excessive. No reason is advanced, or authority cited, in support of this proposition. In view of the facts, as disclosed by the record, the verdict rendered was very moderate.

Finding no error in the record, the judgment will be affirmed, and it is so ordered.

HANNA and PARKER, J.J., concur.