[Collins v. Alabama Great Southern Railroad Co.]

# Collins v. Alabama Great Southern Railroad Co.

*Action against a Railroad Company as Common Carrier by Consignor of Goods.*

1. *Review on appeal; when record fails to disclose demurrer.*—An assignment of error that the trial court erred in overruling a demurrer can not be considered on appeal, when the record fails to disclose what the demurrer was.

2. *Liability of railroad company as common carrier; when it ceases.*—The liability of a railroad company as common carrier, for goods shipped over its railroad does not cease on arrival of the goods at the place of their destination and their deposit there in a warehouse, but continues until the lapse of a reasonable time for the removal of the goods by the consignee; and its liability as a warehouseman does not begin until its liability as a common carrier has ceased.

3. *Same.*—When a railroad company receives goods for transportation, safely transports them to the place of destination, informs the consignee of their arrival, and affords him a reasonable opportunity to remove them, its duty and liability as a common carrier cease; and if the goods are then left in its custody, and are subsequently lost or damaged, its liability is that of a warehouseman only.

4. *Same; effect of statute.*—Under the provisions of the statute, (Code, § 1180), if goods are shipped to a city having 2,000 inhabitants or more, and a daily mail, and the railroad company, within 24 hours after their arrival at such city, gives notice thereof by mail to the consignee, and the goods are placed in its depot, the railroad's liability as a common carrier ceases, and that of a warehouseman begins.

5. *Same; evidence of notice.*—In an action against a railroad company as a common carrier for failure to deliver goods shipped over its line, in order to show that within 24 hours after the arrival of the goods at their place of destination the defendant gave the consignee notice thereof by a postal card, which was addressed and mailed to him, it is not necessary to produce the postal card, since evidence that it was mailed is sufficient.

6. *Notice to third person, as directed by endorsement of the consignor.*—Where goods are consigned to the shipper's order, with instructions to notify a third person of their arrival at the place of consignment, notice thereof to such third person, in accordance with the statute (Code, § 1180), is sufficient to relieve the railroad company of its

[Collins v. Alabama Great Southern Railroad Co.]

liability as a common carrier, and create the liability of warehouse-man.

7. *Same; what is a reasonable time for removal of goods.*—What is a reasonable time for the removal of goods from a railroad depot, after their arrival, is a question of law for the court when the facts are un-disputed ; and when, after the arrival of goods in a city of more than 2,000 inhabitants, and notice thereof is given as required by statute to the person designated to receive them, who lives in said city, they remain in the warehouse of the railroad company six days, this is more than reasonable time within which to remove them; and for their destruction thereafter, the railroad company is liable only as a warehouseman.

8. *Same; storing powder in warehouse.*—The fact that a railroad com-pany stores 1,200 pounds of powder, which was shipped over its line, in its warehouse in a city is not, of itself, such evidence of negligence as entitles one whose goods were destroyed by the explosion of the powder to recover in an action against the railroad company ; since, whether the storing of such a quantity of powder was a nuisance de-pends on the locality and peculiar circumstances of each particular case, and the burden of proving negligence in storing the same is on the person affirming it.

9. *Principal and agent; liability of railroad for acts done by its em-ploye outside of its employment.*—Where an agent or employé acts out-side of the scope of his agency or employment, and of his own will does an unlawful act, injurious to another, he, and not his principal or employer, is liable therefor ; and a railroad company is not liable for the loss of goods which were destroyed by its warehouse being set on fire by one of its employés, for the purpose of destroying evidence of his embezzlement.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This suit was brought on October 9, 1892, by the ap-pellant, James R. Collins, against the appellee, the Ala-bama Great Southern Railroad Company, as a common carrier and a warehouseman, to recover damages for the failure to deliver to the plaintiff a certain lot of goods shipped from New York city to Birmingham, Alabama.

The 1, 2, 3 and 5 counts of the complaint sought a re-covery of the defendant as a common carrrier; and the remaining counts, the 4th and 6th, undertook to hold the defendant responsible as a warehouseman. The defend-ant pleaded the general issue to all of the counts, and to the the 4th and and 6th counts by plea No. 4, pleaded the statute of limitations of one year. The minute entry recites that the demurrer to the 4th plea was overruled, but the record fails to disclose what was the demurrer thereto.

The evidence introduced upon the trial of the cause, as is shown by the bill of exceptions, is without conflict, and is substantially as follows : On July 7, 1891, the plaintiff, James R. Collins, shipped from New York to Birmingham, Alabama, a bale of burlaps, consigned to himself, which was valued at $168.58. On the bill of lading there was an endorsement which required the defendant to notify Stollenwerck & Co., in the city of Birmingham, of the arrival of the goods. On July 17, 1891, the plaintiff again shipped, consigned to his own order, from New York to Birmingham, 4 bales of burlaps valued at $160. This bill of lading required that one T. H. Spencer should be notified of the arrival of the goods in Birmingham, Alabama. These bills of lading were issued in the State of New York, and were like other contracts of that kind. The goods which were shipped on July 7, 1891, arrived in Birmingham July 15th, and those shipped on July 17th arrived at Birmingham on the 24th day of July, 1891. Stollenwerck & Co. were notified of the arrival of the goods, and it was shown that a postal card directed to ''T. H. Spencer, Birmingham, Alabama,'' was placed in the post-office at Birmingham by one of the employés of the defendant. The goods remained in the freight depot of the defendant at Birmingham until the night of July 30, 1891, on which night the said freight depot was consumed by fire. At the time of said fire there was stored in the said freight depot a large quantity of powder, which exploded and destoyed the goods of the plaintiff which were at that time in the said depot. The depot building in which these goods were kept was described in detail ; and it was shown that said depot was built of corrugated iron and covered with tin, and that the railroad company kept a competent watchman there at night for the purpose of guarding the depot. There was no positive evidence introduced showing how the fire occurred further than a suspicion, which did not amount to proof, that one Ellis, who was an employé of the defendant, and who was behind with the company in his accounts, had purposely set fire to the house for the purpose of hiding his default.

The evidence showed that the powder which exploded in the depot that night had been shipped to Birmingham over the line of The Alabama Great Southern Railroad

[Collins v. Alabama Great Southern Railroad Co.]

Company to J. B. Morson, and that Morson had been
duly notified of the arrival of the powder on the morn-
ing of the 30th July; that the powder arrived on the
day before the explosion, the 29th day of July; the fire
and explosion occurring on the night of the 30th.

The evidence further showed that on the same night
of the explosion, and a little while prior thereto, the
watchman, who was on duty at the depot, made an ex-
amination of the building, and found no fire in the build-
ing. The evidence further showed that at the time of
the explosion the watchman was not at the building,
but had gone, or had started, to the union depot for the
purpose of getting a cup of coffee, or some lunch.

The rulings of the trial court upon the evidence, which
are ruled upon by this court on the present appeal, are
sufficiently stated in the opinion.

Upon the hearing of all the evidence the court, at the
request of the defendant, gave the general affirmative
charge in its behalf, and to the giving of this charge the
plaintiff duly excepted. The plaintiff brings this appeal,
and assigns as error the rulings of the trial court upon
the pleadings and evidence, and the giving of the gener-
al affirmative charge for the defendant.

LANE & WHITE, for appellant.—It is a very common
practice in this country for the shipper of goods to con-
sign them to his own order, for the purpose of enabling
him to use the bill of lading as security, or to obtain pay-
ment for the goods before delivery. When this is done,
it is usual for the shipper to have placed upon the face of
the bill the words "notify" some other person; but this
does not make the person to be notified in any sense the
consignee. He can not obtain the goods from the car-
rier until he produces the bill of lading, with the con-
signor's endorsement thereon, or the consignor's order
to deliver him the goods; and for the carrier to deliver
the goods to this person, to whom notice was directed
to be given, is in no sense whatever a delivery to the con-
signee and it will be required to deliver the goods to the
consignor or his order, notwithstanding such delivery.—
Hutchinson on Carriers, § 131 *et seq*.; *Wayand v. A., T.
& Santa Fe R. R. Co.*. 75 Iowa 573; *Libby v. Ingalls*, 124
Mass. 503. Of course the railroad company is charged
with notice of what is on its bill of lading. The person

[Collins v. Alabama Great Southern Railroad Co.]

to be notified is not the consignee, and the very word "notify" on the bill of lading is notice to the carrier that he is not the consignee.—*Furman v. Railroad Co.*, 106 N. Y. 579, s. c. 32 Amer. & Eng. R. R. Cas. 500; *North Penn. R. R. Co. v. Commercial Bank*, 123 U. S. 727, s. c. 35 Amer. & Eng. R. R. Cas. 556.

A. G. SMITH, *contra.*—1. The testimony showed that the bill of lading required the defendant to give notice to Stollenwerk & Co. and T. H. Spencer of the arrival of the goods; and it further showed that within the time required by law, notice was properly given to Stollenwerk & Co. and T. H. Spencer, who were the agents of the plaintiff, at least for receiving notice required of the railroad company of the arrival of the goods; and they remained there in the depot many days after notice was given and before they were destroyed.—Code 1886, § 1180; *S. & N. Ala. R. R. Co. v. Wilson*, 78 Ala. 587; *Kennedy Bros. v. M. & G. R. R. Co.*, 74 Ala. 430; *A. G. S. R. R. Co. v. Grabfelder*, 83 Ala. 200.

2. When a reasonable time has elapsed after the arrival of the goods, if proper notice has been given, as required by the statute, or when no notice is required, after a reasonable time has elapsed after the arrival of the goods without notice, the liability of the railroad company as a common carrier terminates, and a recovery can not be had against it as a common carrier. This practically is settled in the decisions above quoted, and upon this subject see further, *L. & N. R. R. Co. v. McGuire*, 79 Ala. 396; *Kennedy Bros. v. M. & G. R. R. Co.*, 74 Ala. 430; *S. & N. Ala. R. R. Co. v. Wood*, 66 Ala. 167.

3. The goods remained in this depot more than a reasonable length of time after their arrival and before their destruction. The question of what is a reasonable time is a question for the court and not the jury, and the time it takes to constitute a reasonable time has been practically settled by the decisions of this court.—*C. & W. R. R. Co. v. Ludden & Bates*, 89 Ala. 612. A personal delivery of goods to a consignee is not required of a railroad company.—*S. & N. Ala. R. R. Co. v. Wood*, 66 Ala. 167.

4. The defendant being a common carrier, and there being no city ordinance against the storing of powder in the depot for the purpose of delivering it to the consignee,

they had a right to do so. It not being a nuisance *per se*, it devolved upon the plaintiff to show that it was a nuisance, or that there was some negligence attending the storing of it which would render the defendant liable. *Cook & Co. v. Anderson*, 85 Ala. 99. A warehouseman is only required to exercise common care and diligence. *Kennedy Bros. v. M. & G. R. R. Co.*, 74 Ala. 430; *A. G. S. R. R. Co. v. Grabfelder*, 83 Ala. 200; *L. & N. Ala. R. R. Co. v. Wilson*, 78 Ala. 587; *M. & G. R. R. Co. v. Prewitt*, 46 Ala. 63. Even if it was a nuisance, the storing of the powder in the depot was not the proximate cause of the injury, and they can not recover on this complaint because of that fact.—16 Amer. & Eng. Encyc. of Law, 431–455, 446 and notes; *Kelsey v. R. R. Co.*, 89 Ala. 287; *Stanton v. R. R. Co.*, 91 Ala. 382; *Western Railway Co. v. Mutch*, 97 Ala. 194.

5. They can not recover against the defendant by reason of that portion of the evidence in the record which throws a suspicion upon the man Ellis, who was in the employ of the company, because, in the first place, there is not evidence enough to show that Ellis set the house on fire; and in the next place, even if Ellis did set the house on fire, the railroad company is not responsible for it, as it was not done in his line of duty; the railroad company did not order it, participate in it, or ratify the act after it was done.—*Gilliam v. S. & N. Ala. R. R. Co.*, 70 Ala. 269; *A. G. S. R. R. Co. v. Carmichael*, 90 Ala. 19; *Lilley v. Fletcher*, 81 Ala. 234.

HARALSON, J.—1. The first assignment of error is that the court below erred in overruling plaintiff's demurrer to defendant's 4th plea; but, the record fails to disclose what that demurrer was, and we can not, therefore, consider this assignment.

2. According to the decisions of this court, without reference to any statute on the subject, the liability of a railroad company as a common carrier of goods transported over its line, does not cease on the arrival of the goods at their destination, and their deposit there in a warehouse, but continues until the lapse of a reasonable time for the removal of the goods by the consignee, and its liability as a warehouseman does not begin until its liability as a common carrier has ceased.—*Columbus & W. R. R. Co. v. Ludden & Bates*, 89 Ala. 613; *Anniston &*

*A. R. R. Co. v. Ledbetter & Farmer*, 92 Ala. 326.   As a general rule, the undertaking of a common carrier to transport goods to a particular destination, includes the obligation of a safe delivery of them to the consignee.— *S. & N. Ala. Railroad Co. v. Wood*, 66 Ala. 167.

The decisions of this court, however, in the case of railroads have established the rule to be, that when a railroad company receives goods for transportation, safely carries them to their destination, informs the consignee of their arrival, and affords him reasonable opportunity to remove them, its duty and obligation as a common carrier are at an end; and if the goods are left in its custody, its liability for a subsequent loss or damage is that of a warehouseman only. In that relation, it is bound only to common care and diligence.—*Kennedy v. Mobile & G. R. R. Co.*, 74 Ala. 430 ; *Mobile & G. R. R.. Co. v. Prewitt*, 46 Ala. 63 ; *Ala. & Tenn. R. R. R. Co. v. Kidd*, 35 Ala. 209 ; Hutchinson on Carriers, § 350.

3. By section 1180 of the Code, it is provided, that if the place of destination of freight is a city or town having 2,000 inhabitants, or more, and a daily mail, the carrier is not relieved of the responsibility of a common carrier by reason of a deposit or storage of freight in a depot or warehouse, unless, within twenty-four hours after the arrival of such freight, notice thereof is given to the consignee personally or through the mail.   This statute applies to all carriers, including railroads, and prescribes the notice to be given, and how it may be given, necessary to relieve them of the responsibility, in the cities and towns specified.   In such places, if notice thereof, either personal or by mail is given, within 24 hours after the arrival of the goods transported, the liability of a common carrier ceases, when the goods are thereafter placed in a depot or warehouse, and that of a warehouseman begins, on such a deposit.

4. In this case, the proof shows, without conflict, that Stollenwerck & Co., within 24 hours after the arrival of the bale of goods shipped to them, received notice by mail from defendant of their arrival.   In order to show that T. H. Spencer—the party designated to receive the notice of the arrival of the other bales of goods—was duly notified of their arrival, the defendant company sought to prove, against the objection of plaintiff, that

[Collins v. Alabama Great Southern Railroad Co.]

within 24 hours after their arrival, it gave said Spencer such notice by the means of a postal card, containing such notification, addressed and mailed to him at Birmingham. The precise objection to this evidence did not relate to the fact or the time of the mailing, but that "the postal card itself was the best evidence." The objection was not well taken. The postal card was itself a *notice*, given as directed by the statute, and like a notice to quit, or notice of the dishonor of a bill of exchange, notice to produce it was not necessary. Mailing the notice, was what the statute required, and the fact necessary to be proved.—1 Greenl. Ev., § 561, 1 Whart. on Ev.,162; *Watson v. The State*, 63 Ala. 21.

5. It is objected in this connection, that Stollenwerck & Co. and Spencer were not proper parties to receive this notice. The consignor lived in New York, and the goods having been consigned to himself, with directions on the bills of lading, given by him, that notice of their arrival at Birmingham should be given to these persons, thus designated, he constituted them, thereby, his agents to be notified of the arrival of the goods, and to receive them from the defendant. They were virtually the consignees, and the delivery of the goods might have been lawfully made to them. Spencer testified that he was a broker, and sold goods for plaintiff on commission, and that these goods were sent to him as a broker to be disposed of for plaintiff on commission.—*Pepper v. George*, 51 Ala. 190; *Reid v. Bank of Mobile*, 70 Ala. 211.

After the arrival of the goods, and notices of their arrival had been given to the parties thus designated to receive such notices, and to receive the goods themselves, they remained in the warehouse of defendant—one bale of them from the 15th, and the other from the 24th of July—until the night of the 30th of that month, when they were destroyed by fire caused by an explosion of gun powder, stored in the warehouse. This was more than reasonable time within which to remove them.— *C. & W. Railway Co. v. Ludden & Bates*, 89 Ala. 613. The goods, therefore, were held by the defendant, at the time of their destruction, as a warehouseman, with the liabilities as such only; its responsibilities as a common carrier having terminated.

6. We will not review the evidence tending to show the care and diligence exercised by the defendant, both

in the structure of its warehouse, the materials out of which it was built, and the. manner in which the same was guarded and kept to prevent accidents and to preserve the property stored from loss and destruction. These will set out in the report of the cause. It is sufficient to say, that the defendant appears to have exercised all reasonable and proper care to preserve the property, and that the accident by which it was destroyed arose from no negligence on its part.

The fact that the defendant had in its warehouse at the time 1,200 lbs. of powder, is not, of itself, such evidence of negligence as entitles the plaintiff to recover. While it may be said that the keeping of large quantities of explosive material in a building in a populous town or city may be a nuisance, yet, the fact whether it is such or not, must depend on the locality, quantity of the material stored and the circumstances. Negligence in keeping it, or in the manner of its keeping, is requisite to impose a liability to answer in damages for injuries caused by an accidental explosion or fire, which it is incumbent on the party affirming to prove.—*Cook &Co. v. Anderson*, 85 Ala. 105 ; Wood on Nuisances, § 140. The defendant was a common carrier of such and all other commercial materials. It is not shown that there was any city ordinance against storing the powder in its depot, for the purpose of delivering it to its consignee. It arrived on the 29th, the day before the explosion, and the consignee was duly notified on the morning of the 30th of July, the day of the explosion, of its arrival ; and, instead of being negligent, the evidence shows the defendant was very careful to preserve it against accident in a house built of iron and covered with tin and carefully guarded. There was no evidence to show how the explosion occurred, further than that there were some suspicious facts tending to show that one Ellis, an employé of the defendant, who was behind in his accounts, may have set fire to the building, for the purpose of hiding his default. But there was no evidence tending to show, if Ellis did set fire to it, that it was a negligent act of his done while in the performance of his duty. If he did it at all, it was his own tortious, wicked act, done outside the line of his employment, in which the defendant did not participate, or afterwards in any manner ratify, and for which it is not, in any wise, responsible. It is well set-

tled, that if an agent go beyond the range of his employ-
ment or duties, and of his own will do an unlawful act,
injurious to another, he, and not his employer, is liable.
*Gilliam v. S & N. Ala. R. R. Co.*, 70 Ala. 268; *Lilley v.
Fletcher*, 81 Ala. 234.

It is unnecessary to notice the other errors assigned, as
to the introduction of evidence.

There was no error in giving the general charge in
favor of defendant.

Affirmed.