Archuleta v. Floersheim M. Co., 25 N. M. 632.

(No. 2234.    Jan. 17, 1920.)

# ARCHULETA v. FLOERSHEIM
# MERCANTILE Co.

## SYLLABUS BY THE COURT

1.   In a suit to recover damages the complaint proceeded
upon two theories:    (1) That the defendant was negligent in
permitting fire to escape from its premises and communicate
to the property of the plaintiff, and (2) the defendant being
a corporation, that the fire was purposely started by an agent
or employe of the defendant company and allowed to consume
its property, and by reason of the starting of the fire on de-
fendant's property it communicated to plaintiff's property and
destroyed the same.    Defendant moved for an instructed ver-
dict.   Held, that there was no evidence of negligence on the
part of the company in permitting the fire to escape from its
premises; and (2) that if the fire was started by an officer,
agent, or employe of the defendant company, the setting of the
fire and destruction of the corporation's property was outside
of the course of employment of such officer, agent, or employe,
and the corporation was not liable for the act of such agent.
                                                                    P. 634

2.   The master is liable for the wanton or malicious acts of
his servant if they are committed while the servant is acting
in the execution of his authority and within the course of his
employment, but the master is not liable where the servant
is not acting in the execution of his master's authority and
within the course of his employment.                                P. 639

Appeal from District Court, San Miguel County; D.
J. Leahy, Judge.

Action by Leandro Archuleta against the Floersheim
Mercantile Company.   Verdict for plaintiff and judg-
ment thereon, and defendant appeals.   Reversed and re-
manded for further proceedings.

W. R. HOLLY, of Springer, W. G. HAYDON and S. B.
DAVIS, JR., both of East Las Vegas, for appellant.

O. A. LARRAZOLO, of Las Vegas, and A. B. RENEHAN,
of Santa Fe, for appellee.

## OPINION OF THE COURT

ROBERTS, J.   On May 1, 1916, appellant, a corpora-
tion organized under the laws of the state of New Mexico

for carrying on a general merchandising business, was the owner of a store building in the town of Roy, N. M. Adjoining the store building it had a lumber yard and corral. The lumber yard was used for storing lumber, and consisted of sheds extending from the warehouse of the store to a frame dwelling house, 48 feet long and one story high, occupied on the date mentioned by Mrs. Antonia Pacheco. Across the street from the lumber yard and store of the appellant company was a building owned by appellee and used by him for the purpose of conducting a saloon. About 10 o'clock on May 1, 1916, the house occupied by Mrs. Pacheco and the lumber yard and store owned and used by the Floersheim Mercantile Company were destroyed by fire. The fire spread across the street from the lumber yard and store of appellant and destroyed the business house of the appellee, together with other property.

Appellee instituted this action in the court below for the purpose of recovering damages from the appellant for the destruction of his property by the fire. The complaint proceeded upon two theories by separate counts: First, that the appellant corporation negligently failed to confine the fire to its own premises; second, that the fire was purposely started on the property of the appellant corporation by its officers or agents for the purpose of destroying the property of the Floersheim Mercantile Company, the alleged object being to collect on fire insurance policies on the property. Upon issue joined, the case was tried to a jury and a verdict was returned in favor of the appellee, assessing his damages at the value of the building destroyed by fire.

At the conclusion of the evidence for the appellee appellant moved for an instructed verdict, which was denied, and later at the conclusion of its evidence the court was again asked to instruct the jury to return a verdict for the appellant, which was likewise denied. The verdict of the jury, and the judgment of the court are here

attacked upon several grounds, some of which, in view of our conclusion, need not be considered.

The main point of attack is the failure of the court to instruct the jury to return a verdict for the appellant. The motion for a directed verdict went to both counts of the complaint, and appellee argues that if there was evidence justifying the submission of either count to the jury the action of the court was proper. This is controverted by appellant. Appellant argues, however, that there is no evidence justifying the submission of either count to the jury, and a disposition of this question necessarily requires a consideration of the facts in the case.

[1] First adverting to the charge of negligence in permitting the fire to escape. It was the theory of the appellee upon this branch of the case that someone started a fire in the lumber yard owned and conducted by the appellant. It is admitted that there was a fire at the same time in the house occupied by Mrs. Pacheco, and it is not contended that appellant, or any of its officers or agents, had anything to do with the starting of this fire; but there was some evidence that at the time the fire was discovered in the house of Mrs. Pacheco, and before it had broken out and communicated to the Floersheim property, a small fire was seen starting up in one corner of the lumber yard some distance away from the Pacheco house. The theory of negligence is predicated upon the failure of the Floersheim Company to put forth reasonable and diligent efforts to extinguish this fire. Appellee states in his brief that the negligence of appellant consisted in doing nothing to check the lumber yard fire in the first 15 or 20 minutes during which it could have been controlled. Possibly two or three witnesses introduced by appellee testified to the separate fire in the lumber yard. A witness testifying on behalf of appellee said that he was in the appellee's saloon when he heard some one raise the cry of fire. He rushed out of the saloon and saw smoke issuing from the Pacheco house, ran across the street to the house, and at the same time that

Archuleta v. Floersheim M. Co., 25 N. M. 632.

he saw the smoke issuing from the Pacheco house he saw a small fire starting up in one corner of the lumber yard. Another witness for appellee testified that he rode into Roy the morning of the fire, hitched his horse, saw the smoke issuing from the Pacheco house, and also the small fire starting up in the corner of the lumber yard, some distance away from the Pacheco house. He said that he was in the warehouse of the Floersheim Company and said to some one who was with him that there was a fire in the lumber yard; that his remark was not addressed to an employe or agent of the Floersheim Company and there is no evidence whatever that they heard the remark. There were many witnesses testifying in the case to the effect that there was no independent fire in the lumber yard, but that the fire in the lumber yard was communicated solely from the Pacheco house. There is no evidence whatever that any officer or agent or employe of the appellant company had any knowledge whatever that there was a separate fire beginning to burn in the lumber yard at the time the fire originated in the Pacheco house, or that any of them saw the fire or had any knowledge whatever of its existence. When the cry of fire was raised a number of the employes of the appellant went to the Pacheco house, which was but a short distance from the appellant's store, and apparently did all they could to keep the flames from the house from spreading and communicating to the appellant's lumber yard, but without avail. The town of Roy had no fire department, no wells, and there was absolutely no provision whatever for fighting fire. It had not rained for two months and of course was very dry, and when the fire started the wind was very strong. The claim that the Floersheim Company is liable in damages for permitting the fire to spread and destroy the property of appellee necessarily must depend upon several elements, all of which must have been proven by appellee, if his claim can be sustained:

(1) Knowledge of the existence of the fire on the company's premises must have been brought home to some responsible officer of the company.

(2) The spreading of the fire from the company's premises must have been preventable by the use of ordinary diligence.

(3) The company must have failed to use ordinary diligence to prevent the fire from spreading.

(4) The burning of appellee's property must have been due to this lack of diligence on the part of the company.

We have carefully read the evidence in the case and find no evidence whatever justifying the submission to the jury of the question of the negligence of appellant in preventing the spread of the fire.

It is next contended by appellant that there was likewise no evidence to the effect that the fire was purposely started by an officer, agent, or employe of the appellant company. The only evidence going to establish this fact was the testimony of the appellee to the effect that a day or so after the fire Mr. Floersheim, president of the appellant company, said to him that Mr. Alldredge, the vice president and general manager of the appellant company, had intended to advise Archuleta to insure his property, but that he, Floersheim, did not think that this fire would reach Archuleta's property. There were some other facts testified to by various witnesses for the appellee, which, it is argued, present circumstances which afford substantial evidence of the starting of the fire purposely by appellant's agents or servants. A statement of a few of the circumstances will show the lack of merit of this contention. For example, one witness testified that shortly before the fire he saw Mr. Floersheim, president of the company, walking along the side of the lumber yard and saw him enter the warehouse of the appellant

company, another testified that he purchased a tractor from the Floersheim Mercantile Company and gave back a mortgage to the company to secure the larger part of the purchase price. The witness left the tractor on the street in front of a moving picture house. There had been a fire in the picture house two weeks before the conversation and Mr. Alldredge told the witness that he should not leave the tractor in front of the moving picture theatre as it might be destroyed by fire. The theatre was located next to the Archuleta saloon. Another witness testified that on the morning of the fire Mr. Floersheim went to the Pacheco house and asked two of the girls of Mrs. Pacheco to clean up his room; he having a room where he stayed while in Roy. There were two other small children in the house at the time which were left there.

None of these circumstances, as we view them, afforded any probative force whatever. There was certainly nothing even supicious about Mr. Floersheim walking alongside of the lumber yard and entering the warehouse. When Mr. Alldredge asked the purchaser of the tractor to remove it from in front of the moving picture theatre he was taking simply ordinary precaution to protect property upon which the company had a lien. It is absurd to suppose that Mr. Floersheim would seek to get the two older Pacheco girls out of the house and leave remaining there two children, one of whom was not able to protect itself in case of fire. Evidence as to what Mr. Floersheim said to Archuleta long after the fire occurred was no part of the res gestæ and would clearly not be binding upon the appellate corporation, but, as it was admitted without objection, it might be that it would afford some evidence as to culpability on the part of Mr. Floersheim or Mr. Alldredge as to the starting of the fire. The evidence on behalf of the appellant was overwhelming to the effect that the only fire was the one originating in the Pacheco house, with which clearly the appellant had no connection. We do

not base a reversal of this case, however, upon the insufficiency of the evidence in this regard, but upon another proposition, which is controlling.

Even if it be assumed that the fire was deliberately started by a person who held office in the corporate organization, his act would not be that of the company, under the circumstances in this case, and the company would not be liable. The corporation was organized under the laws of this state for the purpose of carrying on a mercantile business, that is, it was engaged in buying and selling general merchandise, lumber, and other articles. Mr. Sol Floersheim was the president of the company and Mr. Alldredge was the vice president and general manager. There was no evidence introduced in the case as to the duties of either of these officers, but if it be assumed for the sake or argument that their duties were such as ordinarily devolve upon such officers, it would be a most violent presumption to suppose that in the performance of such duties they were required to burn up and destroy the property of the corporation. The evidence shows, without dispute, that while the property was insured, yet the company suffered a loss of $12,000 over and above the insurance collected. The liability of the company, assuming for the sake of argument that the fire was purposely started by either Mr. Floersheim, its president, or Mr. Alldredge, its general manager, must depend upon the question as to whether the act of starting the fire and burning the property was in the course of the employment of the president or general manager of the company. In other words, was the function which the servant was discharging at the time when the tort was committed a function which was within the range of the contract of hiring or employment, or which had been allotted to either of the parties after they commenced the performance of their duties?

"If this question is answered in the negative, the master's nonliability is obviously a necessary inference, even though the act from which the plaintiff's injury resulted was done with the view to benefiting the master." Labatt's Master and Servant (2d Ed.) § 2274.

Of course if the evidence in the case showed that it was a part of the duties of either of these officials to burn up and destroy the property of the corporation in whose services they were engaged, for the purpose of collecting the insurance, or for any other object, their act in doing so would be within the course of their employment and the master would be liable. At section 2286 the same author says:

"With respect to cases where the only reasonable conclusions from the rest of the evidence is that the act complained of was done outside the scope of the servant's employment, the authorities show clearly that the mere circumstances of its having been done with the intention of furthering the master's business will not render the master responsible to the party aggrieved by it."

[2] The liability of a corporation for the torts of its agents is now settled for this jurisdiction by the case of Childers v. Southern Pacific Co., 20 N. M. 366, 149 Pac. 307. In holding that the railroad company was liable for an assault made by a person employed by it as watchman at its depot, this court adopted the general rule as to the liability of a corporation for such torts, saying:

"It has been held, in a great variety of cases, that the master is liable for the wanton or malicious acts of his servant if they were committed while the servant was acting in the execution of his authority and within the course of his employment."

The Supreme Court of the United States expresses negatively the same principle in Washington Gaslight Co. v. Lansden, 172 U. S. 544, 19 Sup. Ct. 300, 43 L. Ed. 543, as follows:

"The result of the authorities is, as we think, that in order to hold a corporation liable for the torts of any of its agents, the act in question must be performed in the course and within the scope of the agent's employment in the business of the principal. The corporation can be held responsible for acts which are not strictly within the corporate powers, but which were assumed to be performed for the corporation and by the corporate agents who were competent to employ the corporate powers actually exercised. There need be no written authority under seal nor vote of the corporation constituting the agency or authorizing the act. But in the absence of evidence of this nature there must be evidence of some facts from

which the authority of the agent to act upon or in relation to the subject-matter involved may be fairly and legitimately inferred by the court or jury.''

In Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. 1055, 30 L. Ed. 176, the court quotes the rule from Philadelphia, etc., Ry. Co. v. Quigley, 21 How. 202, 16 L. Ed. 73, as follows:

"The result of the cases is that for acts done by the agents of a corporation, either in contractu or in delicto, in the course of its business and of their employment, the corporation is responsible as an individual is responsible under similar circumstances.''

The question of the liability of a company for the tortious act of its agent therefore narrows itself down to whether the act was done ''in the execution of his authority, and within the course of his employment.'' These words also are defined by this court in Childers v. Southern Pacific Co., as follows, quoting from Mechem on Agency:

"But in general terms it may be said that an act is within the 'course of employment' if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.''

Tested by this rule, there certainly can be no claim that if Mr. Floersheim set fire to the company's property he did so in the execution of his authority or within the scope of his employment under the company. Such an act was not ''fairly and naturally incident to the business'' of the company. It was not done ''with a view to further the master's interest.'' If he did it he stepped aside from his employment for that purpose, and instead of his act being with the view of furthering the company's interest it was for a purpose exactly opposite, for it was to the detriment of his employer, not to its advantage. From the very nature of the act it could not

have "grown out of" or been "incident to the attempt
to perform the master's business," and if the act was
done it must have arisen "wholly from some external,
independent, and personal motive" on the part of Mr.
Floersheim to do the act upon his own account.   If Mr.
Floersheim abandoned his duty as the protector of the
company's property and willfully became its destroyer,
as appellee claimed, he necessarily abandoned his employ-
ment, and the company is no more liable for his action
than for that of any other malicious trespasser.


In Washington Gaslight Co. v. Lansden surpa, the
question was as to the liability of the company for a
libel contained in letters written by its general manager.
The letters contained a matter in which the company
was interested and they were copied into the company's
letter book.   In reversing a judgment rendered against
the company, the Supreme Court of the United States
held that the company was not responsible for the acts
of its manager.   That case is identical in principle with
the present one.   In the course of the discussion the
court said:

"In this case no specific authority was pretended to have
been given the general manager, Leetch, to write the letters
which he sent to Brown, or to authorize the publication of
anything whatever in the periodical named.   We are then
limited to an inquiry whether the evidence is sufficient upon
which a jury might be permitted to base an inference that
Leetch had the necessary authority to act for the company in
this business.   If different inferences might fairly be drawn
from the evidence by reasonable men, then the jury should be
permitted to choose for themselves.   But if only one inference
could be drawn from the evidence, and that is a want of
authority, then the question is a legal one for the court to de-
cide.   We do not mean that in order to render the company
liable there must be some evidence of authority, express or
implied, given to the manager to publish or to authorize the
publishing of a libel, but there must be some evidence from
which an authority might be implied on the part of the mana-
ger to represent the company as within the general scope of
his employment, in regard to the subject-matter of the corre-
spondence between Brown and himself.   There is no evidence
of an express authority, nor of any subsequent ratification of
Leetch's conduct by the company.   Can any authority be in-
ferred from the evidence as to the nature of the duties and

powers of the manager? Were the acts of Leetch within the
general scope of his employment as manager? Upon a care-
ful perusal of the whole evidence we find nothing upon which
such an inference can be based; nothing to show that any
correspondence whatever, upon the subject in hand, was
within the scope of the manager's employment."

Later in its opinion the court said:

"If we set aside for a moment the testimony in regard to the
duties to be performed by the superintendent, as stated in the
communication of March, 1865, and look simply at the other
facts in the case, we are still without evidence from which
it might be inferred that the act on the part of the manager
was within the scope of his employment. The burden is upon
the plaintiff to show this fact.   *   *   *   We are of opinion
that the court erred in submitting to the jury the question
whether Leetch, in respect to the subject of the letters writ-
ten by him to Brown, had authority to bind the company.
The court should have directed a verdict for the corporation
on the ground that there was an entire lack of evidence upon
which to base a verdict against it."

The foregoing language is applicable to this case. The
burden was upon the plaintiff here to show that Mr.
Floersheim or some other agent of the company started
the fire, and that in so doing he was acting within the
scope of his employment. Appellant failed to do so,
and his case necessarily fell with his failure.

In the case of Collins v. Alabama Great Southern
Railroad Co., 104 Ala. 390, 16 South. 140, it was the
contention that an employe of the railroad company had
set fire to the warehouse in which the plaintiff's goods
were stored. The court said:

"But there was no evidence tending to show if Ellis did
set fire to it, that it was a negligent act of his done while in
the perforance of his duty. If he did it at all, it was his own
toritous, wicked act, done outside the line of his employment,
in which the defendant did not participate, or afterwards in
any manner ratify, and for which it is not, in any wise, re-
sponsible. It is well settled that if an agent go beyond the
range of his employment or duties, and of his own will do an
unlawful act injurious to another, he, and not his employer, is
liable."

From the above it necessarily follows that there was no
evidence in the case establishing the liability of the ap-

pellant corporation, for which reason the court should have sustained appellant's motion for an instructed verdict.

For the reasons stated, the cause is reversed and remanded to the district court for further proceedings in accordance with this opinion; and

It is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.