[No. 20758. *En Banc.* June 27, 1928.]

NETHERLANDS AMERICAN MORTGAGE BANK, *Appellant,*
v. EASTERN RAILWAY & LUMBER COMPANY,
*Respondent.*[1]

[1] MASTER AND SERVANT (172)—INJURIES TO THIRD PERSON—SCOPE OF EMPLOYMENT—STARTING BACK FIRE. The starting of a back fire, is within the scope of the employment of a servant engaged to build a railroad cut, where his operations started a fire and the back fire was started to prevent the spread of the first fire.

[2] SAME (172). The fact that the back fire was started too far away, and may have been the result of bad judgment, does not tend to establish that it was beyond the scope of his authority. HOLCOMB, J., dissents.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered December 6, 1926, dismissing an action in tort, at the close of plaintiff's evidence. Reversed.

*Wright, Froude, Allen & Hilen,* for appellant.
*C. D. Cunningham,* for respondent.

ASKREN, J.—This action was brought to recover for the alleged negligence of the defendant corporation in

[1]Reported in 268 Pac. 604.

starting fires on its logged-off land, which spread to land owned by the plaintiff causing damage. From a judgment of nonsuit at the close of plaintiff's case, this appeal was taken.

The parties own contiguous properties. On June 19, 1925, the respondent secured a permit from the state fire warden's office to burn forest debris upon 480 acres of its property where it had been conducting logging operations. The permit granted the right to burn from June 20 to June 24. Some time later, the exact date being undisclosed by the evidence, the respondent had a crew of men working upon that part of its premises in close proximity to appellant's land. They were engaged in putting in a railroad cut for respondent's use. Donkey engines were used in the operations, and some time after noon a fire broke out as a result of sparks escaping from the engines. The crew was in charge of one Bigler, who immediately put the men to work fighting the fire. In the performance of this work, he started some backfires along the trestles. Bigler then secured matches from the time-keeper, went some distance away and started another fire on the respondent's property. This point was approximately a mile distant from the place where the cut was being made. The last fire spread rapidly until it reached appellant's property, causing substantial damage. All of the fires set out were upon respondent's property, and were covered, so far as the location is concerned, by the permit which was introduced in evidence.

[1] The trial court adopted the view that there was insufficient evidence to warrant the conclusion that Bigler, in setting the last fire, was acting through any authorization of the respondent. It is contended here that his act was not within the scope of his employment. It is said that Bigler was authorized to

construct a railroad cut, and that such work gave him
no authority to set out fires on the respondent's land.
To this abstract proposition, assent may readily be
given.   But the facts in this case do not lend them-
selves to such a limited view of the situation.   While
employed in charge of the crew for the purpose of
making the cut in question, the operation caused fires
to be started on respondent's property.   We think it
must be readily conceded that the law will not only
imply sufficient authorization, but will require that he
endeavor to stamp out the fires so created.   Nor does
respondent deny such a duty.   In putting the fires out,
backfires were started for the purpose of controlling
the situation.   This is a method commonly used.   Thus
there can be no doubt of Bigler's authority thus far.

[2]   Does the fact that the next fire was started
some distance away cancel that implied authority?
We think the circumstances must answer that question.
There is nothing in the record to indicate that the last
fire was started for any ulterior purpose.   We must
ascribe to men's acts the natural motives which
prompt them to do, or not to do, a given thing.   The
reasonable inference to be drawn from the setting of
the last fire is that it was done in furtherance of the
same purpose which prompted Bigler to set the first
backfire.   It may be that Bigler's action was not justi-
fied under all the surrounding circumstances; he may
have been mistaken in his judgment as to the effect
of the last fire, but of course these things would not
relieve respondent, if the act was performed in the
course of doing those things which he would reason-
ably be expected to do in the course of his employ-
ment.

These facts render the instant case readily distin-
guishable from the cases relied upon by respondent,

notably, *Marlowe v. Bland,* 154 N. C. 140, 69 S. E. 752, 47 L. R. A. (N. S.) 1116.

In that case a servant had been instructed to cut and pile cornstalks. Having finished the duty imposed upon him, he decided that he would burn the stalks. The sparks from the fire were blown to another's property, causing damage for which suit was brought. Recovery was denied because the servant had, of his own volition, set the fire, his act not being in the course of his employment. Said the court:

"A correct application of these authorities and the principles upon which they rest to the facts presented, will in our opinion sustain the action of the lower court in ordering a nonsuit. As a general proposition the duty of a hired man is to do what he is told, and in this instance he was directed to do a definite, specific thing, importing no menace to any one, and after completing the work that was given him to do, he goes on of his own motion and does something else—engages in an act which is not infrequently a source of danger to neighbors—and does it under circumstances amounting to a negligent wrong and causing substantial pecuniary injury. Plaintiff did not rely on the inferences which might arise from the fact that his neighbor's hired man while engaged in clearing off a field, on a windy day, set fire to a pile of cornstalks near the plaintiff's woodland, from which it might be reasonably inferred that this negligence was within the scope of his employment, but his own proof goes further and shows that the employee had no orders to burn these stalks, nor was he sent with general directions to clear off the field, involving some extent of discretion in his method, as in the citation from Wood, approved in *Robert's Case, supra;* but he was directed to do this specific act, and the course and scope of his employment, in this instance, was to do as he was told."

In that case, there was no original fire started by accident. The fire set by the servant was not done,

nor could it be inferred that it was done, to protect his master's property.

A case more in point is *Paraffine Oil Co. v. Berry,* 93 S. W. (Tex. Civ. App.) 1089. In that action, a farmer's pasture had been destroyed by a fire started by another on his own property where a crew was drilling for oil. There was no evidence of authorization, but one of the employees told the plaintiff that they had started the fire. The court observed:

"The master is liable for the acts of his servants within the scope of their employment, done in furtherance of the master's business, and for the accomplishment of the object for which they were employed, though the particular act was unauthorized and unlawful. While there is no direct evidence going to show that the act of appellant's servants in setting out the fire was within the scope of their employment, and done in furtherance of its business in which they were engaged, we think the circumstances shown by the evidence tend to establish such fact, and to show that such act was negligent, and caused the damages sued for to appellee's property."

The rule announced in Wood, Law of Master and Servant is quoted approvingly in *Seybold v. Eisle,* 154 Iowa 128, 134 N. W. 578, as follows:

" 'The simple test is whether they were acts within the scope of his employment—not whether they were done while prosecuting the master's business; but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By authorized is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders.' The same author said: 'Without stopping to give further illustrations from the modern cases, it may be said to be well settled that the master is not only responsible for

the negligence or misfeasance or malfeasance of his servant in respect of the discharge of duties expressly imposed upon him, but also in all cases where the act of the servant is within the scope of his implied authority, and in determining this the nature of the employment, and the ends or purposes sought to be attained, are material elements, and the real test of liability.  Prima facie, when the act is one which the master himself might have done, it will be presumed that it was an act within the scope of the servant's authority, and the burden of proving want of authority rests upon the defendant.'  Wood on Master and Servant, p. 559.''

Some contention is made that the evidence indicated that this fire was set on June 27, and that the permit expired June 24.  Whether the evidence established the date of the fire as June 27, we regard as immaterial, due to the fact that the reasonable inference is that the fire was set as a backfire to control the previous ones started by accident, and not set as a matter of right under the permit.

We think a *prima facie* case was made on behalf of the appellant, and that a nonsuit should not have been entered.

Judgment reversed.

FULLERTON, C. J., FRENCH, MAIN, MITCHELL, PARKER, BEALS, and TOLMAN, JJ., concur.

HOLCOMB, J. (dissenting).—I am unable to concur in the prevailing decision.

The record shows that the fire caused by the sparks from the donkey engine at work in excavating a cut on the right of way was entirely under control before Bigler, a mere hook-tender and boss of the donkey engine crew, went to a tract of logged-off land of respondent, procured some tools that had been left there, and then, for some unexplained reason, started the fire,

almost a mile distant from the operations on the right of way. There is no evidence that that fire was started by Bigler as a back-fire. In fact, as appellant itself states on page 5 of its opening brief:

"This fire [started by the engine] at one time jumped the river and was threatening the buildings of the witness Keesie, when Bigler and his men and a timekeeper for the company named Beck finally *got control of it and put it out.* Also, towards the end of the afternoon the men under Bigler and Beck started back-fires to protect the company's railroad trestles. While this crew were so engaged Bigler went off about a quarter of a mile [the undisputed record is, it was very nearly a mile by direct line] to a place northerly from the timber plot of plaintiff and set the fire that did the damage."

The fire was started by Bigler in section 23, belonging to respondent, for which, appellant proved, respondent had procured a permit to burn the forest debris between June 20 and June 24. The fire occurred, as overwhelmingly shown, on the "last Saturday in June"—or June 27, not on June 20. The permit to burn the logged-off land had then expired. It was the theory of appellant, as shown by the evidence it introduced and asserted on page 15, opening brief, that the

"company had obtained a permit from the state fire warden to burn its logged-off lands in section 23; . . . that the premises to be burned according to the terms of the permit between June 20 and June 24, 1925, were in an unlawful condition for burning, in that snags over twenty-five feet in height were still standing upon the property and that no provision had been made to protect the spread of fire."

It was not only the law, but the very terms of the permit, introduced in evidence by appellant, provided that such conditions and others should be met. It is

to be presumed that that is why it let the permit expire.

It is not to be presumed, nor inferred from any lack of evidence upon the subject, that respondent intended to, or authorized, the commission of an unlawful act by setting its logged-off lands in section 23 afire, when it had no lawful right so to do. Nor is it to be presumed that any employee could assume on behalf of his employer to commit an act which would not be for the interest of the employer, and which the employer could not lawfully, either expressly or impliedly, authorize at the time. Hence, no express authority to start the fire to burn off section 23 being shown or to be inferred by the acts of respondent, none could be implied.

In *Gregory v. Loose,* 19 Wash. 599, 54 Pac. 33, concerning the authority to be implied from acts of an agent done in the course of the agent's employment in some other business, we approved the following statement:

" 'But it is not to be inferred, however, that authority is, in any case, to be implied without reason, or presumed without cause. The implication must be based upon facts, and cannot arise from any mere argument as to the convenience, utility, or propriety of its existence.' "—citing Mechem, Story, and a case.

This court then said:

"But it is well settled in the law of agency that the extent of implied authority is limited to acts of a *like kind* with those from which it is implied, and that an implied power is never extended by construction beyond the obvious purpose for which it is granted."—citing texts and cases.

Applying these principles, it is clear that the construction of a railroad cut and protecting the property there situated belonging to respondent was the extent of the authority, real or apparent, delegated to Bigler.

Therefore, this case falls within the line of cases, of which *Marlowe v. Bland,* 154 N. C. 140, 69 S. E. 752, 47 L. R. A. (N. S.) 1116, is cited in the majority opinion as an example.

Other similar decisions by courts of last resort are: *Collins v. Alabama G. S. R. Co.,* 104 Ala. 390, 16 South. 140; *Archuleta v. Floersheim Mercantile Co.,* 25 N. M. 632, 187 Pac. 272.

Whatever may have been the motive of Bigler in going a mile away from the only work he was authorized to do, and setting out a fire upon the logged-off lands of his employer, it was not necessary to protect any of the property of respondent, was neither expressly nor impliedly authorized, and his tort ought never to be held to be the act of his employer.

For which reasons, I dissent.