**HITT et al. v. EAST TEXAS THEATRES, Inc.**

**No. 6297.**

Court of Civil Appeals of Texas. Texarkana.

July 9, 1947.

On Rehearing July 17, 1947.

Pollard, Lawrence, Blackburn, Reeves, Crawford & Jarrel, of Tyler, for appellants.

Orgain, Bell & Tucker, Major T. Bell, and Tom J. Hanlon, all of Beaumont, and Nat Gentry, Jr., of Tyler, for appellee.

HALL, Chief Justice.

This suit grows out of the willful burning of appellee's theatre in Smith County, Texas, by its local manager, Joe Hackney. Appellants, plaintiffs below, instituted this suit against appellee and alleged that as a result of the willful burning of appellee's theatre by Hackney at the instigation of his immediate superior, S. L. Oakley, their building and contents adjoining the theatre were destroyed for which they sought damages against appellee. Appellants averred further that if the burning of the theatre was not instigated by appellee, then it ratified and adopted the acts of Hackney and Oakley in burning same and is estopped "from setting up a claim that Hackney and his immediate superior, Oakley, were not acting within the scope of their authority in burning the theatre." In answer appellee leveled numerous exceptions to appellants' petition to the effect that appellants' allegations, if true, were insufficient to show liability on the part of appellee. It is alleged by appellee that Hackney in setting fire to said theatre building was not acting within the scope of his authority from appellee, nor was any one else connected with the burning of said theatre acting in the course of his employment with appellee "but instead, were acting outside of the business of and employment by this defendant (appellee) * * *." The trial was to a jury. After appellants had presented their evidence to the jury and rested their case appellee presented its motion for an instructed verdict, which was granted. Based upon the directed verdict judgment was by the trial court entered for appellee.

We shall first consider whether Hackney and Oakley, or either of them, at the time of the willful burning of the theatre were acting within the scope of their authority as agents of appellee. Appellee is a corporation and was at the time of the fire, with E. L. Kurth, J. H. Kurth, Jr., and Simon Henderson, of Lufkin, Texas, Sol Gordon and Joe Clements of Beaumont, Texas, and Y. Frank German, of New York, as directors. It was operating a moving picture theatre in the town of Arp, Smith County, Texas, in a building owned by Mr. Fair. The lease under which it was operating was for five years at $25 per month with right of renewal for an additional five years at $35 per month, and was dated June 5, 1935. One Joe Hackney was manager of said theatre for appellee and S. L. Oakley was supervisor of the local managers of several theatres owned by appellee including the one at Arp. On October 7, 1938, the theatre was destroyed by fire. At the time of the fire, it is undisputed that the theatre was making a small profit. On March 29, 1939, appellee collected $6,850.51 as insurance on the destroyed theatre. At about the same time the insurance money was collected, Julius Gordon, son of director Sol Gordon, who was in Dallas booking pictures for appellee's several theatres, received information from Paul Horton, doorman of the Arp theatre, that the building had been set on fire by its manager, Hackney, at the instigation of Superintendent S. L. Oakley. Gordon immediately called Hackney to Dallas and on the following day after he had received such information Hackney confessed to him that he had willfully set

fire to the theatre and implicated S. L. Oakley. Oakley at the time was in Galveston, Texas, and had booked passage for himself and family on a steamship for Florida. Julius Gordon reached him by phone, summoned him to Dallas and confronted him with the statement theretofore given by Horton. Oakley denied any connection with the burning of the theatre. When Hackney confessed to Gordon that he had willfully burned the theatre at Arp, Texas, Gordon discharged him on the spot. Hackney was later indicted by the Smith County grand jury, pleaded guilty to arson and has served a term in the state penitentiary for that offense. Immediately after the conference with Oakley and Hackney, Julius Gordon called the board of directors of appellee to meet in Beaumont to consider the confession made by Hackney to him. At said meeting of the board of directors it was decided to return to the insurance company the money paid on the 29th of March, for the burning of the theatre, and the money was returned to the insurance company. Mr. Fair, the owner of the destroyed building in which the theatre was located, and appellee in October, 1938, pursuant to a new contract, began to rebuild its theatre at the same location. Mr. Fair constructed the building to the extent of $8,000 and appellee contributed in cash toward said building the sum of $1,797.42. In addition it installed equipment therein at a net cost of $5,729.77, making a total cash investment by it of $7,527.19. It agreed to pay Mr. Fair a monthly rental on said new building of $113.71 for a period of ten years. The total amount of rental agreed to be paid to Fair by appellee over the ten-year period under the new contract amounts to $13,645.60.

Hackney was employed by the theatre, as stated above, as its local manager to operate the theatre and Oakley as his immediate superior was to supervise said operation. Their duty as agents of appellee was to operate the theatre at Arp for the benefit of their principal, appellee. Certainly it was not their duty, even remotely, to destroy the very business they were employed to operate, maintain and protect. Certainly the fire was not for the benefit of appellee, because from the undisputed facts in the record, they have sustained a substantial loss and have refused to retain the money paid to them by the insurance company on account of said loss. From a careful examination of this record we fail to find any circumstance that would show any authority from the governing body of appellee to either Hackney or Oakley instructing them to destroy this theatre by fire. Therefore Hackney's and Oakley's acts can in no sense be attributed to or binding upon appellee, their principal, because their acts in burning the theatre were entirely without the scope of their authority. The case of Archuleta v. Floersheim Mercantile Co., 25 N.M. 632, 187 P. 272, 274, 40 A.L.R. 199, cited by appellee, is directly in point, and from which we quote the following:

"Even if it be assumed that the fire was deliberately started by a person who held office in the corporate organization, his act would not be that of the company, under the circumstances in this case, and the company would not be liable. The corporation was organized under the laws of this state for the purpose of carrying on a mercantile business, that is, it was engaged in buying and selling general merchandise, lumber, and other articles. Mr. Sol Floersheim was the president of the company and Mr. Alldredge was the vice president and general manager. There was no evidence introduced in the case as to the duties of either of these officers, but if it be assumed for the sake of argument that their duties were such as ordinarily devolve upon such officers, it would be a most violent presumption to suppose that in the performance of such duties they were required to burn up or destroy the property of the corporation. The evidence shows, without dispute, that while the property was insured, yet the company suffered a loss of $12,000 over and above the insurance collected. The liability of the company, assuming for the sake of argument that the fire was purposely started by either Mr. Floersheim, its president, or Mr. Alldredge, its general manager, must depend upon the question as to whether the act of starting the fire and burning the property was in the course of the employ-

ment of the president or general manager of the company. In other words, was the function which the servant was discharging at the time when the tort was committed a function which was within the range of the contract of hiring or employment, or which had been allotted to either of the parties after they commenced the performance of their duties?

" 'If this question is answered in the negative, the master's nonliability is obviously a necessary inference, even though the act from which the plaintiff's injury resulted was done with the view to benefiting the master.' Labatt's Master and Servant (2d Ed.) § 2274.

\* \* \* \* \* \*

"Tested by this rule, there certainly can be no claim that if Mr. Floersheim set fire to the company's property he did so in the execution of his authority or within the scope of his employment under the company. Such an act was not 'fairly and naturally incident to the business' of the company. It was not done 'with a view to further the master's interest.' If he did it he stepped aside from his employment for that purpose, and instead of his act being with the view of furthering the company's interest it was for a purpose exactly opposite, for it was to the detriment of his employer, not to its advantage. From the very nature of the act it could not have 'grown out of' or been 'incident to the attempt to perform the master's business,' and if the act was done it must have arisen 'wholly from some external, independent, and personal motive' on the part of Mr. Floersheim to do the act upon his own account. If Mr. Floersheim abandoned his duty as the protector of the company's property and willfully became its destroyer, as appellee claimed, he necessarily abandoned his employment, and the company is no more liable for his action than for that of any other malicious trespasser."

Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S.W. 402; Magnolia Petroleum Co. v. Guffey, Tex.Com.App., 95 S.W.2d 960; Medlin Milling Co. v. Boutwell, 104 Tex. 87, 133 S.W. 1042, 34 L.R.A.,N.S., 109; see also Gulf, C. & S. F. Ry. Co. v. Reed, 80 Tex. 362, 15 S.W. 1105, 26 Am.

St.Rep. 749; Gulf, C. & S. F. Ry. Co. v. Besser, Tex.Civ.App., 181 S.W. 253, citing N. Y. T. & M. Ry. Co. v. Sutherland, 3 Willson, Civ.Cas.Ct.App., Sec. 140; Mayes v. American National Ins. Co., Tex.Civ.App., 16 S.W.2d 333; Magnolia Petroleum Co. v. Winkler, Tex.Civ.App., 40 S.W.2d 831; Bresnan v. Republic Supply Co., Tex.Civ.App., 63 S.W.2d 1105, (writ refused). This latter case holds that when a servant steps aside from his master's business, however short the time, and commits an offense, injury, or trespass, the master is not liable. To the same effect is Bishop v. Farm & Home Savings & Loan Ass'n, Tex.Civ.App., 75 S.W.2d 285; Southwest Dairy Products Co., Inc., v. DeFrates, et al., 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854, and authorities cited; Smith v. Turner, Tex.Civ.App., 150 S.W.2d 304, and authorities cited. We therefore conclude that Hackney and Oakley when they burned appellee's theatre were not acting within the scope, or apparent scope, of their authority as agents of appellee, but had stepped aside and were acting on their own behalf.

We will next consider whether appellee ratified and adopted the acts of Hackney and Oakley in burning the theatre and whether it is estopped to deny the agency of Hackney in burning the theatre. From this record it cannot be said that the circumstances surrounding the fire, and those developing later, are sufficient to charge appellee with ratification and adoption of the acts of Hackney and Oakley in setting fire to said theatre, or to estop appellee to deny their agency in this respect. Indeed, we hardly think that the circumstances amount to any evidence at all showing ratification and adoption by and estoppel of appellee. It is true that the night of the fire, when Hackney called Oakley to inform him of the fire, Oakley was in the office or hotel room of Gordon, in the city of Dallas, together with another agent of appellee, and that when telling Gordon about the fire Oakley stated that Hackney was very much disturbed, Gordon told Oakley to tell Hackney that "appellee would take care of him." Gordon explains this statement by saying that when any of their employees had lost their job

through no fault of their own they had always taken care of them. They did take care of Hackney on this occasion by making him manager of their theatre at Greggton, Texas, and later when they rebuilt their theatre at Arp they placed him in charge where he remained until Gordon received the information that Hackney had willfully burned the theatre at Arp. Nothing was said by Hackney in the phone conversation with Oakley that the theatre had been set on fire by him. These facts and circumstances, in our opinion, repel the idea that appellee adopted and ratified the acts of Hackney and Oakley in destroying its theatre. When the record is considered as a whole, the circumstances set out above amount to nothing more than suspicion. If circumstances referable to an issue of fact in a case create nothing more than a surmise or suspicion, it cannot be said to raise an issue of fact for the jury to determine. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. But instead the circumstances in the record as to alleged ratification by or estoppel of appellee corporation, reveal the opposite. As stated in General Paint Corp. v. Kramer, 10 Cir., 57 F.2d 698, 704:

"Instead of ratifying, the defendants immediately repudiated the alleged agreement of Boyland; they denied that he made such agreement, denied his authority to do so, if he did make it; and disavowed it in its entirety. True, they retained the assignments; but, as we have seen, their right to retain them was based on a separate and distinct transaction; and the assertion of such a right, although erroneous, is no evidence of ratification of a disconnected and unauthorized act."

So, here, when appellee learned of the willful burning of its theatre by its servant Hackney, with the connivance and at the instigation of Oakley, its board of directors immediately ordered the insurance money returned.

The record in this case conclusively rebuts the conclusion that the governing body of appellee instigated, ratified or condoned the acts of Hackney and Oakley in willfully burning the theatre.

In the above discussion we have assumed that Oakley connived with Hackney in burning the theatre. In fairness to Oakley, we state that he has continuously denied such complicity, and the grand jury of Smith County refused to indict him for arson.

Finding no error in the record the judgment of the trial court is in all things affirmed.

On Petition for Rehearing.

Appellee has called to our attention an error in our opinion wherein we stated that Hackney implicated S. L. Oakley in burning the theatre building. Hackney did not implicate Oakley. It was the witness Horton who implicated him. We got the names of Hackney and Horton confused.

Appellee's motion to correct this error is granted.