## BALTIMORE & O. R. CO. v. PAPA.
### No. 8271.

United States Court of Appeals for the District of Columbia.

Argued Jan. 11, 1943.

Decided Feb. 1, 1943.

Mr. Henry R. Gower, with whom Messrs. George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Leo N. McGuire were on the brief, all of Washington, D. C., for appellant.

Mr. Simon Hirshman, with whom Mr. Aubrey St. C. Wardwell was on the brief, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

**414**

### GRONER, C. J.

This is an appeal from a judgment entered on the verdict of a jury in a personal injury case. The injury occurred while plaintiff (appellee) was attempting to cross from the south to the north side of K Street, N. W., between 30th and 31st Streets, in the City of Washington. At the point in question, the river section of Georgetown, K Street is a busy thoroughfare, in the middle of which defendant (appellant) maintains a double track railway, with numerous sidings leading into industrial enterprises facing on the south side and extending to the Potomac River. Freight trains use the tracks continuously, sometimes blocking passage across the street for as much as three blocks. Plaintiff, who was employed as a truck driver for a concrete company located on the south side of the street, testified that on the morning of the accident he left his place of employment to go to a restaurant on the north side to lunch. When he reached the south sidewalk he discovered defendant's train blocking his way. The train consisted of some ten or twelve freight cars with a pushing engine on the rear. Plaintiff waited five minutes, as the train shifted back and forth two or three times. He described what thereafter occurred as follows:

"I waited for him to get out of the road and he didn't. So he finally stopped.

"The engine was to my left, I would say about 25 or 30 feet. I started out, and as I looked, the engineer nodded and beckoned me through. As I had done many times before, I walked over to the engine and * * * put my left foot on the step of the engine that sets up about 10 or 12 inches off the ground, and grabbed hold of the car, and at the same time put my foot up on the coupler.

"At that time the train started and caught my foot. I don't remember much after that because I was hurt right bad."

The engineer who testified for defendant denied that he had invited plaintiff to cross over between the engine and the cars, but admitted that he saw him and several others about to cross, and that it was common practice so to cross when trains blocked the crossings. He thought the injury had been caused by the falling back of the cars against the engine just as plaintiff had his foot on the coupler. This occurs when, or shortly after, the train is stopped by the engine brake, and is due to a five-inch play or slack in the coupling apparatus, which, when the train stops, is released and takes up.

The trial court was of the opinion that the vital question in the case was whether the engineer actually beckoned plaintiff to cross over between the car and the engine, and on that theory told the jury that if, after the train came to a standstill, the engineer invited plaintiff to cross over and then started the train before he could cross, thereby causing his injury, he was guilty of negligence for which the Railroad Company was responsible. On the defendant's theory that the injury was due to the settling back of the cars against the engine by the release of the slack in the spring of the coupler, the court went no further than to say that the plaintiff was entitled to recover if this backward movement was the result of the negligence of the engineer.

There were no objections to the instructions as given.

In this court defendant's principal ground of complaint is that the court below erred in refusing to instruct the jury that because of a municipal police regulation providing that "no unauthorized person" shall trespass upon locomotives or cars operated upon tracks, the act of appellee in attempting to cross over between the locomotive and the car made him a trespasser, unless "the jury find it was within the scope of the duties of the defendant's engineman to invite pedestrians to go upon the locomotive and cross over the couplers between the locomotive and the car to which it was attached."

We think there was no error in refusing to instruct the jury to this effect. If plaintiff's evidence be accepted as true, as it must be on this appeal, he was expressly invited by the engineer then in charge of the movement of the train to cross over as he attempted. To hold that in such circumstances plaintiff was a trespasser would be to establish a rule not only detrimental to public safety but contrary to the well established principle that a master is responsible for the tortious acts of a servant done in the course of his employment, whether or not the servant is obeying the master's orders. Philadelphia & R. R. Co. v. Derby, 14 How. 468, 14 L.Ed. 502; Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; Western R. E. Trustees v. Hughes, 8 Cir., 172 F. 206; Department of Water, etc., v. Anderson, 9 Cir., 95 F.2d 577.

■ Furthermore, the uncontradicted evidence showed that it was a common practice for pedestrians, prevented from crossing over from one side of the street to the other by the presence of trains, to cross over the trains when at a standstill, and that this was done with the consent, either tacit or express, of the employees of the Railroad Company in charge of the trains. Certainly the Railroad Company knew, or should have known, of this established practice. In such circumstances it became the duty of defendant to exercise reasonable care in the operation of the trains to avoid injuring them.[1] Certainly there is nothing in the language of the police regulation to preclude the operation of these principles.

■ Nor do we think that one accepting such an invitation as plaintiff says was extended was guilty of contributory negligence as a matter of law. "To cross over the bumpers between two freight cars, when at rest, is not necessarily a dangerous operation. The peril of the situation arises from the danger of the cars starting before the crossing is completed." Sheridan v. Baltimore & O. R. Co., 101 Md. 50, 60 A. 280, 281.

■ In committing to the engineer control of the movements of the train, the Company assumed the obligation that he would discharge his duty with due regard to the safety of pedestrians using the streets, and when the engineer invited plaintiff to cross between the cars he was bound to exercise reasonable care to avoid doing any act to injure him. Consequently, if the injury here occurred as the result of the starting of the train by the engineer while appellee was in the act of crossing, defendant is liable. And, if the engineer, with knowledge of the danger from the probable motion of the cars from the taking up of the slack, invited plaintiff to cross without warning him of such danger, and as a result he was injured, defendant is likewise liable. Upon consideration of the whole case, including the other assignments, which we have considered but which we think it unnecessary to discuss, we think the issues were properly submitted and the judgment on the verdict of the jury correct. See Sheridan v. Baltimore & O. R. Co., supra; Cherry v. St. Louis & S. F. R. Co., 163 Mo.App. 53, 145 S.W. 837; Irvin v. Gulf, C. & S. F. R. Co., Tex.Civ. App., 42 S.W. 661; Walker v. Southern Ry., 77 S.C. 161, 57 S.E. 764, 12 Ann.Cas. 591; Pennsylvania Co. v. Avran, 6 Cir., 249 F. 474; Freeman v. Terry, Tex.Civ. App., 144 S.W. 1016; Glenn v. Southern Ry., 145 S.C. 41, 142 S.E. 801.

Affirmed.

---

[1] Boston & M. R. R. v. Rafalko, 1 Cir., 228 F. 440; Clampit v. Chicago, St. P. & K. C. Ry. Co., 84 Iowa 71, 50 N.W. 673; Chicago, B. & Q. R. Co. v. Murowski, 179 Ill. 77, 53 N.E. 572.