223 F.2d 298
 WHITE AUTO STORES, Inc., Appellant,
v.
Juan REYES; Jovita Reyes; and Juan Reyes as Administrator of
the Estate of Anna Marie Reyes; Senaida Reyes;
Julian Reyes; and Jose Luis Reyes,
Deceased; and Stahmann Farms,
Inc., Appellees.
 No. 4978.
 United States Court of Appeals Tenth Circuit.
 May 24, 1955.
 
 R. C. Garland, Las Cruces, New Mexico (of Garland & Sanders, Las Cruces, New Mexico), for appellant.
 W. C. Whatley, Las Cruces, New Mexico (Whatley & Oman and Edward E. Triviz, Las Cruces, New Mexico, were with him on the brief), for appellees, Juan Reyes and others.
 B. G. Johnson, Albuquerque, New Mexico, for appellee, Stahmann Farms, Inc.
 Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 On May 11, 1953, a butane gas explosion occurred at the home of the plaintiffs, Juan Reyes and his wife, Jovita Reyes, causing the death of their four minor children, and serious and painful burns and permanent injuries to Mrs. Reyes. The home in which the explosion occurred was owned by Stahmann Farms, Inc., and was equipped for the use of butane gas. The defendant, White Auto Stores, Inc., had sold the plaintiffs a gas stove and the explosion occurred while one of its employees was testing the stove for gas leaks after he had connected it to the gas system.
 
 
 2
 Jovita Reyes sought damages for her personal injuries, and Juan Reyes sued for damages which he suffered because of the injuries to his wife including medical and hospital costs. Juan Reyes sought to recover damages as administrator of the estates of the four deceased children. The defendant brought Stahmann Farms, Inc., herein referred to as Stahmann, into the case by third party proceedings in which it alleged that the plaintiffs were tenants of Stahmann, and that their injuries resulted from negligence in the maintenance of the gas system in the house. The defendant denied any negligence on its part, and as an affirmative defense alleged contributory negligence on the part of the plaintiff. The principal defense of the defendant was that its employee was not acting within the scope of his employment when the gas stove was connected. Stahmann alleged that it was not guilty of any negligence which was the proximate cause of the explosion and the resulting deaths and injuries. The case was tried to a jury which returned verdicts in favor of the plaintiffs and against White Auto Stores, Inc. in the total sum of $77,500.[1] The jury also found the issues in favor of Stahmann. This appeal is from the judgment entered on those verdicts.
 
 
 3
 Juan Reyes was an employee of Stahmann and was furnished living quarters for himself and family in addition to his regular compensation. Prior to May 10, 1953, Juan and his family lived in quarters which were not equipped for the use of gas. Neither he nor his wife had had any experience in the use of gas appliances, and did not know how to operate them. The Reyes family contemplated moving into other quarters belonging to Stahmann and did move on May 10th. These quarters contained a butane gas system. On Saturday evening, May 9th, Juan went to the defendant's store in Las Cruces, New Mexico, to purchase a kerosene or wood cook stove. Joe Lucero, manager of the defendant's appliance department, advised Juan to purchase a butane gas cook stove. Juan purchased the recommended stove on a deferred payment plan. Lucero told him that the stove would be delivered the following Monday morning and that neither the defendant nor Lucero was licensed to connect the stove with the butane system but that it would be necessary for Juan to obtain a regular licensed plumber for that purpose.
 
 
 4
 At about noon on Monday, May 11th, the stove was delivered to the Reyes' home by two employees of the defendant. The entire Reyes family was there at the time and Juan showed the two employees where to place the stove in the kitchen and told them that Lucero wanted them to obtain a measurement for the length of pipe necessary to connect the stove with the system. Juan then left to resume his work. About three o'clock that afternoon, Lucero called at the home and told Mrs. Reyes that the defendant had sent him to connect the stove. He had with him a box of tools suitable for adjusting and connecting the stove and a piece of pipe of the proper length to connect it, together with fittings to adjust and install it. Lucero immediately began to connect the stove with the butane system, and while he was connecting it, he told Mrs. Reyes that he was not supposed to do that kind of work and asked her not to say anything about it.[2] Mrs. Reyes was an uneducated woman who could not read or write, and could not speak the English language. During the time the work was being done, Mrs. Reyes was sitting in a chair near the door between the kitchen and the living room with a baby in her arms. It is evident from the record that she did not know anything about what was being done and took no part in it.
 
 
 5
 After Lucero had connected the stove, he went outside to the butane container and turned the gas into the system. Upon his return, he told Mrs. Reyes that the gas was coming through. She observed some liquid dripping from one of the connections which Lucero had made. He lighted a match and when he applied it to the connection a small flame arose indicating that gas was escaping. He tightened the connection further, repeated the test, and found that there was still a small leak. After further tightening, Lucero lit a third match and the explosion followed. Mrs. Reyes was blown through the kitchen door into the living room where three of her children were sleeping. All four children died from the burns they received, and Lucero was also killed. Mrs. Reyes survived after months of hospitalization and treatment.
 
 
 6
 The prior occupants of the house had a gas heater connected in the living room. When they left, the heater was taken and the end of the connecting pipe was left open. It was still open when Lucero turned on the gas. A short time after the explosion occurred, inspectors for the New Mexico Public Service Commission made an inspection. They found that the stove was of a convertible type suitable for the use of natural or butane gas; that three of the four burners had been converted for the use of butane gas; and that the fourth burner had not been converted but was open so that gas could escape therefrom. A neighbor, who was in the house immediately after the explosion, said that tools were on and about the stove and that one burner was open. A plumber testified that the burners showed that they had been lit shortly before the explosion. No question is raised here as to the sufficiency of the evidence to sustain the amount of the verdicts, or the negligence of Lucero. We think it is clear that the evidence is sufficient to sustain the verdicts and to establish the negligence of Lucero.
 
 
 7
 For reversal the defendant presents three general propositions: first, that Lucero was not acting within the authority or the scope of his employment at the Reyes' home; second, that the relationship of landlord and tenant existed between Reyes and Stahmann, and that the uncontradicted evidence showed that the explosion was caused by the failure of Stahmann to comply with the New Mexico law in maintaining the gas system; and third, that the trial court gave certain erroneous instructions and erroneously refused to give the defendant's requested instructions.
 
 
 8
 The evidence established that the employees of the defendant, including Lucero, were trained to adjust and service gas appliances, and that when such appliances were sold it was their duty to follow up such sales and do whatever was necessary to satisfy the purchaser and put the appliance in good working condition.[3] The evidence was uncontradicted that the defendant did not have the necessary license to connect or service gas stoves, and that Lucero told Reyes that it would be necessary for him to obtain a plumber for this purpose. It was also uncontradicted that Lucero was not authorized by his employer to connect stoves. Mrs. Reyes was told that he was not authorized to install stoves. But these circumstances do not necessarily absolve an employer from liability for the acts of his employee. Early in its legal history, the New Mexico Supreme Court established the rule that an act of an employee is within the course of his employment if, one, it was something fairly and naturally incident to the master's business and, two, if it was done while the servant was engaged upon his master's business with a view to furthering the master's interest, or from some impulse which naturally grew out of or was incident to an attempt to perform the master's business and did not arise wholly from some external, independent and personal motive on the part of the employee to do the act upon his own account. Childers v. Southern Pacific Co., 20 N.M. 366, 149 P. 307.
 
 
 9
 In the Childers case, the employee was a watchman whose duty was to keep trespassers off the property of the railroad, and to prevent persons from boarding and stealing rides on trains. The employee saw the plaintiff near the tracks while a train was passing. He thought the plaintiff was a trespasser preparing to board the train. To prevent this trespass the watchman, without authority, severely beat the plaintiff. In upholding a judgment in favor of the plaintiff the court ruled that although the employee was not authorized to beat the trespasser, it was within the employee's duties to prevent a trespass, and that the employer was liable for the employee's acts in the furtherance of this duty even though the wrongful act was unauthorized. The rule has been cited with approval in subsequent New Mexico cases. Miera v. George, 55 N.M. 535, 237 P.2d 102; Archuleta v. Floersheim Mercantile Co., 25 N.M. 632, 187 P. 272, 273, 40 A.L.R. 199; Gutierrez v. Montosa Sheep Co., 25 N.M. 540, 185 P. 273; Bruton v. Sakariason, 21 N.M. 438, 155 P. 725.
 
 
 10
 The law is settled that where a servant acts about the master's business for which he is employed, the master is liable although the servant acts beyond his authority or in a forbidden manner. Restatement of the Law of Agency, Sec. 230. If the servant's act is unauthorized, it is still within the scope of his employment if it is of the same general nature of and incidental to the conduct authorized. For the master to escape liability, it must be shown that the servant, when the wrongful act was committed, had abandoned his employment and was acting for a purpose of his own which was not incident to his employment. If the injurious act is not shown to be a separate and independent transaction, the master is not relieved because the servant in some respect acted beyond his authority. A servant usually is not employed to be negligent, but this does not mean that a negligent act is outside the scope of his employment. The master is liable if the act was incident to the ultimate purpose of the servant's employment. Paleockrasas v. Garcia, 2 Cir.,183 F.2d 244; Oman v. United States, 10 Cir., 179 F.2d 738; Keller v. Safeway Stores, Inc., 111 Mont. 28, 108 P.2d 605; Horton v. Jones, 208 Miss. 257, 44 So.2d 397, 15 A.L.R.2d 824; Sears, Roebuck & Co. v. Creekmore,199 Miss. 48, 23 So.2d 250; Fanciullo v. B.G. & S. Theatre Corp., 297 Mass. 44, 8 N.E.2d 174.
 
 
 11
 Whether Lucero was acting within the scope of his employment is a question of fact and on appeal we are required to consider the evidence and the reasonable inferences to be drawn therefrom most favorable to the plaintiffs. The evidence is sufficient to show that Lucero and other employees of the plaintiff were instructed and trained to adjust and service gas appliances which had been sold, and to show customers how to use them. After the installation of a gas appliance, the employees would call on the customer for the purpose of adjusting the pilot light, the top burners, and the oven. They were furnished the necessary tools to make those adjustments. As part of their duties in satisfying the purchaser they were to do everything necessary except install and connect gas appliances.[4] Lucero, as manager of the defendant's appliance department, was responsible for the servicing of all appliances which were sold from his department. After the explosion, the store manager told inspectors of the New Mexico Public Service Commission that Lucero was to make adjustments on appliances which were sold from his department, and that he was on such a service call when the explosion occurred.
 
 
 12
 The stove delivered to the Reyes' home was set to burn natural gas and was useless until it had been adjusted to burn butane gas. Immediately after the explosion it was found that three of the four burners on the top of the stove had been adjusted for use of butane gas, and that the fourth burner was in the process of adjustment. The oven burner was still set for the use of natural gas. The tools on and about the stove and the condition of the burners indicated that Lucero was in the process of adjusting the stove for butane gas when the explosion occurred. The adjustments could not have been made and the use of the stove fully explained to one wholly unfamiliar with gas stoves without connecting the stove. Lucero had partially explained to Mrs. Reyes how to use the stove. We think these facts fully justified the jury in finding that the real purpose of Lucero's visit to the Reyes' home was to adjust the stove to burn butane gas, and to explain to Mrs. Reyes how to use it. Apparently, he anticipated that the stove would not be connected to the gas system because he came prepared to make the connection. When he made it and turned on the gas, his acts were merely incidental to the performance of his duties as an employee of the defendant, even though they may have been in disobedience of the defendant's express instructions.[5] This was the theory upon which the case was submitted to the jury.[6]
 
 
 13
 It appears to us to be inescapable that the connection of the stove and the turning on of the gas by Lucero was fairly and naturally incident to his master's business; that his negligent acts were done while he was engaged upon his master's business with the purpose of furthering that business; and that they did not arise from some external, independent and personal motive on his part. Everything he did was within the general area of his employment. Where a master places an employee in charge of the management of his business or the care of his property, he is responsible for his employee's acts if the latter exceeds his authority in accomplishing that which he was employed to accomplish. Paleockrasas v. Garcia, supra; United States Lighterage Corp. v. Petterson Lighterage & Towing Corp., 2 Cir., 142 F.2d 197; Baltimore & O.R. Co. v. Papa, 77 U.S.App.D.C. 202, 133 F.2d 413; Pritchard v. Gilbert, 107 Cal.App.2d 1, 236 P.2d 412; Delisa v. Arthur F. Schmidt, Inc., 285 N.Y. 314, 34 N.E.2d 336; J. C. Penney Co., Inc. v. Oberpriller, 141 Tex. 128, 170 S.W.2d 607.
 
 
 14
 As to the liability of Stahmann, the defendant's theory was fully submitted. The jury was instructed that if it found from the evidence that Stahmann installed the butane gas system and piping in the house occupied by the plaintiffs, and that it did not install the shutoff or gas cock required by the rules of the New Mexico Public Service Commission, its failure would be negligence per se. The instruction then stated: 'and if you so find that the third party defendant Stahmann Farms, Inc. was guilty of negligence per se, then you must go further and determine whether such negligence was a proximate or contributing cause of the explosion with its resulting deaths and injuries; and if you do so find, then you are instructed to return a verdict against the third party defendant Stahmann Farms, Inc., and in favor of the defendant White's Auto Stores, Inc.'
 
 
 15
 The court then instructed the jury concerning the ordinary duties of a landlord to his tenant; the imputing of knowledge by a servant to his master; and whether, if the jury found that the third party defendant was negligent, the intervening acts of Lucero should have been anticipated by it as reasonably likely to have happened. If they were foreseeable, the jury was then instructed that the negligence of Stahmann would still be a proximate cause of the explosion.
 
 
 16
 The evidence concerning the liability of Stahmann is substantially undisputed. A plumber employed by it installed the system at the Reyes' house; one of its employees knew that the house had been vacated shortly prior to the time when the Reyeses moved in; and one of its employees checked the butane tank outside the house to make sure that the shutoff valve had been turned off. No one checked the inside of the house. Admittedly, failure to cap the gas opening into the living room was a violation of the rules of the New Mexico Public Service Commission.
 
 
 17
 The question of whether these acts of Stahmann constituted negligence, and whether its negligence, if any, was the proximate cause of the explosion were for the jury to determine, and they were properly submitted to it by the trial court. Milwaukee & Saint Paul Ry. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256; Allers v. Bohmker, 7 Cir., 199 F.2d 790; Scott v. Chicago, Rock Island & Pacific R. Co., 8 Cir., 197 F.2d 259; Atlantic Coast Line R. Co. v. Key, 5 Cir., 196 F.2d 64; Kidd v. Thomas Gilcrease Foundation, 5 Cir., 194 F.2d 129; Lucero v. Harshey, 50 N.M. 1, 165 P.2d 587; White v. Montoya, 46 N.M. 241, 126 P.2d 471; Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921,[7] 926.
 
 
 18
 The defendant next contends that the court erred in giving certain instructions because they stressed and over-emphasized the liability of an employer for the actions of an employee and unduly stressed the responsibility of an employer for the acts of an employee. A trial court in its instructions to the jury should, so far as possible, avoid undue emphasis of issues, theories or defenses by repetition or by giving them undue prominence or by minimizing the importance of others. 53 Am.Jur. Trial, Sections 566, 568; State v. Martinez, 36 N.M. 360, 15 P.2d 685. The instructions objected to were statements of the law relating to the liability of an employer for the acts of his employee. There is no suggestion that these instructions did not correctly state the law on the subject. They were necessary for a proper disposition of the case. We have examined the instructions and find no violation of the above rule.
 
 
 19
 The court instructed the jury that the plaintiff, Juan Reyes, had sued to recover Five Thousand Dollars for the loss of consortium of his wife as a result of her injuries and resulting disabilities. The jury was told that if it found for the plaintiff, Jovita Reyes, for her injuries and resulting disabilities, and for the plaintiff, Juan Reyes, for the cost of medicines, medical attention, hospital care, nursing and other expenses, then it could also find for Juan Reyes for the loss of consortium of his wife resulting from her injuries and disabilities. The verdict for Juan Reyes was for $15,500 and was not itemized. The defendant urges that this instruction was confusing and misleading to the jury. No objection to the instruction or the form of the verdict was made upon this ground and it cannot be urged here. Fed.Rules Civ.Proc. rule 51, 28 U.S.C.A.; Allen v. Nelson Dodd Produce Co., 10 Cir., 207 F.2d 296.
 
 
 20
 Finally, the defendant contends that the court erred in refusing to give certain offered instructions. We find no merit in this contention. The offered instructions related to the liability of the defendant if the jury found that Lucero had abandoned his employer's business when he went to the Reyes' home and connected the gas stove; the assumption of risk of Jovita Reyes; the liability of Stahmann as owner of the property; contributory negligence of the plaintiffs; and stated that the jury should not be permitted to speculate on a proximate cause of the explosion. While most of the instructions offered were not objectionable, those which were given by the court fairly and adequately covered the matters referred to in the offered instructions and presented to the jury the defendant's theory of the case as warranted by the evidence.
 
 
 21
 Judgment affirmed.
 
 
 
 [1]
 The verdicts were as follows: Jovita Reyes, $50,000; Juan Reyes, $15,500; the estates of the four children, $3000 each
 
 
 [2]
 In a deposition taken prior to trial, Mrs. Reyes testified as follows:
 'Q. Did you request the drivers to send someone out?-- a. No, sir.
 'Q. Did the drivers tell you that someone would come out and connect the stove?-- A. They didn't tell me a thing.
 'Q. They didn't tell you a thing. What was it again that this man said to you when he first knocked at your door?-- A. If Juan Reyes lived there.
 'Q. Did he tell you his name?-- A. No, sir.
 'Q. What did you tell him?-- A. Yes, that Juan Reyes lived there.
 'Q. Then what did he say?-- A. He told me that he had come to connect the stove that I had ordered. That had been brought to us.
 'Q. What else did he say about that? Anything?-- A. No, not at all.
 'Q. Did he tell you that he would help you connect the stove if you would keep quiet about it?-- A. He told me this way when he was connecting it. He told me that he was going to connect the stove because we had bought it at the furniture store. At his furniture store. But for me not to tell anyone because they did not have a permit to connect stoves. That is what he told her.
 'Q. That he didn't have a permit?-- A. That they did not have a permit to connect the stove.
 'Q. Did you tell him you would keep quiet about it?-- A. I didn't say anything. I just kept quiet.'
 
 
 [3]
 An inspector for the Liquidified Petroleum Division of the New Mexico Public Service Commission in relating a conversation with the general manager of the defendant testified:
 'Q. All right, sir, just tell us what you heard, there.-- A. The manager said Joe R. Lucero was on this service call, he was in his personal car, but it was during working hours, and he was employed by them. He said they had sold the range, and delivered it on the company truck. The manager of the store said he did not know who had connected the range. He said that they made follow-up and good-will calls, after a sale. This, he said, was to try to get more sales prospects, and make satisfied customers. He was asked, directly, if the man in their employ, was to make adjustments on appliances sold by them, and he said that he did.
 'Q. Did he tell you that Lucero was on that date, out there, making such a call?-- A. That is right.
 'Q. And making such adjustments?-- A. That is right.
 'Q. All right, and on that date, that he was in the employ of White's Auto Stores?-- A. That is right.'
 
 
 [4]
 The defendant's vice-president testified that the company taught the employees how to make adjustments on a stove to give satisfactory performance, and that the employees are expected to do more than just talk to customers about their problems with appliances
 
 
 [5]
 There was evidence that the employees were not forbidden to install and connect gas stoves outside the city limits of Las Cruces and that they made some installations and connections in the country
 
 
 [6]
 The court gave this instruction to the jury:
 'An employer is responsible for the acts of his employee if such are within the scope of his employment, without regard to the employee's motives, although the acts may be in violation of the employer's orders or instructions, and although they may have been expressly forbidden by the employer, and especially is this so where the employer knew, or should have known, that such acts were likely to be performed, and that damage to others would likely result. The test of the employer's responsibility for the acts of his employee is not whether such acts were done in accordance with the instructions of the employer to the employee, but whether such were done in the prosecution of the business that the employee was employed to do, and an act is regarded as authorized in the legal sense if it is incidental to the performance of the duties entrusted to the employee, even though it is in disobedience of the employer's express orders and instructions.'
 
 
 [7]
 In Greenfield v. Bruskas it is said:
 'The 'proximate cause' of an injury is 'the 'cause which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred." Gilbert v. New Mexico Construction Co., 39 N.M. 216, 44 P.2d 489, 490. It is an ultimate fact, and is usually an inference to be drawn by the jury from the facts proved. It only becomes a question of law when the facts regarding causation are undisputed and all reasonable inferences that can be drawn therefrom are plain, consistent, and uncontradictory.'